**Katie R. HARDIN, Plaintiff–Appellant,**

v.

**S.C. JOHNSON & SON, INC., Defendant–Appellee.**

No. 98–2058.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 9, 1998.

Decided Jan. 28, 1999.

Rehearing and Suggestion for Rehearing En Banc Denied March 15, 1999.

---

Willie J. Nunnery (argued), Madison, WI, for Plaintiff–Appellant.

Bernard J. Bobber (argued), Foley & Lardner, Milwaukee, WI, for Defendant–Appellee.

Before FLAUM, EASTERBROOK and DIANE P. WOOD, Circuit Judges.

FLAUM, Circuit Judge.

Before us is Katie R. Hardin's ("Hardin") appeal from the district court's grant of summary judgment to S.C. Johnson & Son, Inc., ("S.C.Johnson") on her Title VII sexual and racial harassment claims and her 42 U.S.C. § 1981 claim. The district court adopted the recommendation of Magistrate Judge Goodstein, who found that although Ms. Hardin was mistreated by an obnoxious co-worker, her case could not survive the defendant's motion for summary judgment. For the reasons discussed below, we affirm the district court's decision.

## FACTS

Katie Hardin was hired by S.C. Johnson at its Sturtevant, Wisconsin plant as an hourly worker in 1972. Starting in 1988, she changed production lines, and began working with and for Nels Anderson. By all accounts, Anderson was a crude and boorish person, prone to offensive language and behavior. In the time they worked together, Anderson often used expletives, directed at Hardin and other workers, and berated them with statements like "get your head out of your ass" or "dumb motherfucker." Hardin also alleges that on numerous occasions, Anderson touched her. Although she says the touching lasted between a few and thirty seconds, her complaint does not specify where or in what manner Anderson touched her. A year after transferring to Anderson's line, Hardin and her coworkers complained to a supervisor, who told Anderson his profanity was inappropriate for the workplace.

Anderson apparently did not get the message, and continued using foul language and behaving crudely. Hardin proffers the affidavit of Anderson's ex-girlfriend, who stated that between 1991 and 1994, Anderson routinely referred to Hardin and other black women as "stupid black bitches," "stupid niggers," and "black cunts," although Hardin does not assert Anderson made such statements to her. Hardin does offer evidence that Anderson continued to curse at her and other factory employees. In 1993 and again in 1995, Hardin complained to management about Anderson's behavior. Each time the company met with her, and responded to her complaints by reiterating its warnings to Anderson about his inappropriate behavior. S.C. Johnson also told Anderson to avoid the plaintiff unless he absolutely had to speak to her.

In her 1995 complaint to the company, Hardin asserted that she was being treated poorly because she was a black woman. In addition to the cursing and touching, she complained that Anderson startled her by driving up behind her in an electric cart without warning, letting a door slam in her face, and cutting her off in the parking lot. An investigation by S.C. Johnson's human resources director found that no other African–American employees believed they were being discriminated against on the basis of race, although it turned up evidence that a number of white men on the line felt they were mistreated by Anderson.

Additional complaints in 1995, including one to the president of S.C. Johnson, William Perez, resulted in Anderson being transferred to another production line. On June 1, Hardin learned that Anderson was temporarily re-assigned to work on her line during the June 3 overtime shift. Hardin opted not to work that day, a decision for which she was not penalized. Two days later, S.C. Johnson promised that they would rarely be assigned to the same line again, but that if that came to pass, Hardin would be informed ahead of time, and would be given the option to demur from working with Anderson.

On June 13, 1995, Hardin filed a complaint with the Wisconsin Department of Industry, Labor and Human Relations' Equal Rights Division ("ERD"). She received a right to sue letter on September 8 of that year, and brought her cause of action. The magistrate judge ruled in favor of S.C. Johnson, and the

district court approved of that decision. This appeal followed.

## ANALYSIS

 The district court's decision to grant summary judgment to the defendant is reviewed de novo. *Chmiel v. J.C. Penney Life Ins. Co.,* 158 F.3d 966, 968 (7th Cir. 1998). It is appropriate only where the non-moving party fails to set forth specific facts showing that there is a genuine issue of material fact for trial. Fed.R.Civ.P. 56(e); *Senner v. Northcentral Technical College,* 113 F.3d 750, 757 (7th Cir.1997). Although we must draw all reasonable inferences in Hardin's favor, *NLFC, Inc. v. Devcom Mid-America, Inc.,* 45 F.3d 231, 234 (7th Cir. 1995), not every factual dispute creates a barrier to summary judgment. Only disputes that might affect the outcome of the suit under our precedent will properly preclude the entry of summary judgment. *Derrico v. Bungee Intern. Mfg. Co.,* 989 F.2d 247, 250 (7th Cir.1993).

With this standard in mind, we review the record to ascertain whether Hardin presented evidence giving rise to a triable claim. First, however, we must determine what of the evidence Hardin proffered we may use in reaching our ultimate conclusion.

## I.

 S.C. Johnson argues that Hardin is time-barred from relying on any evidence of harassment occurring prior to August 16, 1994—300 days before her complaint with the Wisconsin ERD. Under Title VII, a plaintiff has 300 days from the occurrence of an allegedly discriminatory act in which to file a timely charge either with the federal Equal Employment Opportunity Commission or the appropriate state agency—here the ERD. Generally, a plaintiff is only allowed to base a Title VII suit on conduct occurring within the limitations period. *Galloway v. General Motors Service Parts Oper.,* 78 F.3d 1164, 1166 (7th Cir.1996).

 A particular exception to this is the "continuing violation doctrine" which this court has recognized on a multitude of occasions. *Dasgupta v. University of Wisconsin Bd. of Regents,* 121 F.3d 1138, 1139 (7th Cir.1997); *Galloway,* 78 F.3d at 1166 (collecting cases). This doctrine is designed to "accommodate plaintiffs who can show that there has been a pattern or policy of discrimination continuing from outside the limitations period into the statutory limitations period, so that all discriminatory acts committed as part of this pattern or policy can be considered ... timely." Peatzold & O'Leary, *Continuing Violations and Hostile Environment Sexual Harassment: When is Enough, Enough?,* 31 AM. BUS. L.J. 365 (1994).

 When it would be unreasonable to expect the plaintiff to perceive offensive conduct as Title VII harassment before the limitations period runs, or the earlier discrimination may only be recognized as actionable in light of "events that occurred later, within the period of the statute of limitations" the continuing violation doctrine applies. *Galloway,* 78 F.3d at 1167. The doctrine also may be used when, after an initial incident of discrimination, a plaintiff does not feel "sufficient distress to ... mak[e] a federal case." *Id.* at 1166.

 On the other hand, the continuing violation doctrine has delineated limits. Where a pattern of harassment spreads out over years, and it is evident long before the plaintiff sues that she was a victim of actionable harassment, she "cannot reach back and base her suit on conduct that occurred outside the statute of limitations." *Id.* at 1167; *Doe v. R.R. Donnelley & Sons., Co.,* 42 F.3d 439, 446 (7th Cir.1994). While a single comment may not be harassment, if the comment is repeated over a period of years, its cumulative effect likely precludes invocation of the doctrine. See *Galloway,* 78 F.3d at 1167.

 It is clear from Ms. Hardin's evidence that the continuing violation doctrine is inapplicable here. The evidence advanced in support of the plaintiff's motion for summary judgment shows that Anderson began directing rude and offensive behavior—brief touching, coarse language and statements to the plaintiff that she should move off of Anderson's line—toward Hardin in 1988. Hardin testified that she felt harassed as early as 1988. She verbally complained to

management in 1989, and filed a written complaint with S.C. Johnson's human resources department in 1993. It is apparent that Hardin believed that she was a victim of harassment long before she filed her complaint with the Wisconsin ERD; it follows that it would not have been unreasonable for her to seek redress for this conduct by filing before June 1995. Accordingly, in her Title VII claims, she may not reach back and rely on evidence occurring prior to 300 days before she filed her complaint. Her racial and sexual harassment complaints must stand or fall on conduct occurring between August 16, 1994 and June 12, 1995, although her 42 U.S.C. § 1981 claim has a six year statute of limitations.

For purposes of the Title VII claim, this eliminates the most damaging evidence of harassment by Anderson. These alleged racist statements to Brannon about the plaintiff happened prior to the limitations period, and thus are irrelevant. There are other problems with those proffered statements—they were made outside of the workplace, and Ms. Hardin admittedly knew nothing of them. We note, however, that were such noxious statements relevant to the record we considered—if in fact Anderson spoke them in the workplace or to Hardin's face within the limitations period—the thrust of this opinion could be markedly different.

## II.

 Title VII's ban on gender discrimination is violated when "discrimination based on sex ... creates a hostile or abusive work environment." *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 66, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). To make a claim under Title VII, a plaintiff must show that her workplace was both objectively and subjectively hostile. *Harris v. Forklift Systems*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). There is no dispute that the plaintiff subjectively believed that her workplace was hostile in this case. The plaintiff must also show that the harassment was objectively "sufficiently severe or pervasive as to alter the conditions of the victim's employment and to create an abusive working atmosphere." *R.R. Donnelley & Sons*,

42 F.3d at 443. This standard also applies to racial discrimination suits under Title VII. *Rodgers v. Western–Southern Life Ins. Co.*, 12 F.3d 668, 673 (7th Cir.1993). Whether such an environment exists is a question of law. *Brooms v. Regal Tube Co.*, 881 F.2d 412, 420 (7th Cir.1989). Because Hardin's racial and gender discrimination claims rely on the same evidence, we analyze them together.

 In reviewing Hardin's claims, we underscore that Anderson's conduct need not have been explicitly sexual or racial in order to create a hostile environment as the magistrate judge's opinion might appear to indicate. The complained of conduct must have either a sexual or racial character *or purpose* to support a Title VII claim. *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1308 (7th Cir. 1989) (emphasis added).

Against this backdrop, we examine Anderson's actions committed within the limitations period. They include: allowing a door to close in Hardin's face, startling her by approaching her from behind in an electric cart without warning, cutting her off in the parking lot, and his persistent cursing and use of abusive language. Obviously, we agree with the district court that it is unfortunate that Ms. Hardin was subjected to such behavior. Nevertheless, we cannot conclude that these actions constituted sexual or racial harassment.

 Looking at Anderson's coarse language it is apparent that there was nothing inherently sexual or racial about his comments. Hardin alleges that Anderson said things to her such as "what the hell is going on?"; "what the hell are you doing?"; "get your head out of your ass"; "dumb motherfucker"; and "when the fuck are you going to get the product." These comments are much like ones in *Galloway*, which we viewed as in no way indicating that "women might be thought to be inferior to men in the workplace, or unworthy of equal dignity and respect." 78 F.3d at 1168; *See also Johnson v. Hondo, Inc.*, 125 F.3d 408, 412 (7th Cir. 1997) (similar statements were held to be "simpl[e] expressions of animosity or juvenile provocation" rather than creating a hostile

environment). Nor do these verbal outbursts implicate negative attitudes toward African-Americans. It cannot be said with any degree of certainty that the character of these remarks was discriminatory.

Moreover, the evidence demonstrates that Hardin was not singled out for abusive verbal treatment. Nothing indicates that Anderson's purpose in using disparaging language was to discriminate against women or black people. Hardin testified in her deposition that Anderson cursed at all employees on the line, white and black, male and female. This is supported by the depositions of nearly everyone who testified; it is undisputed that Anderson was a crude individual who treated all of his coworkers poorly. Thus, it would not be rational for a trier of fact to conclude that Anderson made the workplace less congenial for women or blacks than he did for men or whites. *See Galloway,* 78 F.3d at 1168.

▮ Hardin also puts forward evidence of nonverbal harassment—the electric cart, door slamming and cutting off incidents—which were not directed at other employees. However, these events cannot be seen as having racial or gender overtones, and nothing suggests they were motivated by discrimination. Additionally, they were insufficiently severe to give rise to a hostile environment. As we recently noted, there is a "safe harbor for employers in which the alleged harassing conduct is too tepid or intermittent or equivocal to make a reasonable person believe that she has been discriminated against on the basis of her sex." *Adusumilli v. City of Chicago,* 164 F.3d 353, 362 (7th Cir.1998) (citation omitted). There, the court found no hostile environment where there was brief touching and poking by a coworker, as well as ambiguous comments directed at the plaintiff. *Id.* As the experienced magistrate judge here discussed in comprehensive detail, the facts of other cases, such as *Baskerville v. Culligan Int'l Co.,* 50 F.3d 428 (7th Cir.1995) and *Saxton v. AT & T,* 10 F.3d 526 (7th Cir.1993) involved more intimidating and threatening actions, yet were not found to be sufficiently severe or pervasive to create a hostile working environment.

Because Hardin cannot establish that she was subjected to either gender or racial discrimination creating a hostile work environment, we need not go on to analyze whether S.C. Johnson's response to her complaints was negligent.

### III.

The plaintiff's final claim is that the defendant's failure to remediate the situation between herself and Anderson amounted to a violation of 42 U.S.C. § 1981. This Reconstruction-era statute, provides "[a]ll persons ... shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Although a 1989 Supreme Court ruling held that § 1981's protections only applied to contract formation, *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), the Civil Rights Act of 1991 mooted *Patterson,* amending § 1981 to prohibit racial harassment on the job, and other forms of discrimination occurring after the formation of a contract. *Gonzalez v. Ingersoll Mill. Mach. Co.,* 133 F.3d 1025, 1033 (7th Cir.1998). The plaintiff contends that she was subject to both disparate treatment and a hostile work environment in violation of her contract with the defendant under the statute.

▮ Hardin's disparate treatment claim is that the company would not have allowed a white person to be abused by Anderson in the same fashion she was. She asserts that the defendant's "racially motivated failure to respond adequately to the plaintiff's complaint" violated § 1981. Of course, she may not rely on her own subjective and unsubstantiated assertions to prove her case. *Fairchild v. Forma Scientific,* 147 F.3d 567, 574 (7th Cir.1998). Instead, she must present evidence that the defendant failed to respond to her complaints, and that the failure was racially motivated. *See Gonzalez,* 133 F.3d at 1035. Hardin may offer either direct or indirect evidence to show racial discrimination. *Id.; see also Eiland v. Trinity Hospital,* 150 F.3d 747, 750 (7th Cir. 1998). She shows neither.

The only direct evidence of racism in the corpus of evidence before us is Anderson's alleged string of odious statements to his then-girlfriend Brannon.[1] Although these statements are not time-barred for § 1981 purposes, we still have doubts about their possible admissibility because the proffered comments were not made in the workplace, and Hardin never heard them. However, even if we considered such statements, she would fare no better because Anderson was not a workplace decision maker. Thus, his purported statements cannot provide the basis for a determination of discrimination. *Eiland,* 150 F.3d at 750 (non-decision maker's racial animus not imputed to company without showing a sufficient nexus). Turning back to the facts before us, Hardin points to no direct evidence suggesting that the defendant acted upon racially discriminatory motives.

Neither can the plaintiff point to a similarly situated white employee who was treated more favorably by the defendant. *See Gonzalez,* 133 F.3d at 1035. The facts are undisputed that blacks and whites were treated with equal disrespect by Anderson. Anderson apparently behaved toward everyone in the same manner—he swore at them, ridiculed them and threw objects at or around them. Hardin's claim that S.C. Johnson responded more quickly to the needs of white employees is belied by the fact that she was accompanied by a white co-worker in at least one of her complaints to management, which ultimately led to Anderson being told to "tone it down." She fails to point to anything showing either that white coworkers' complaints about Anderson were responded to with more alacrity, or their complaints about any similar incidents were treated more solicitously by the company. Because Hardin cannot make showings of discrimination—either through direct or indirect evidence—her disparate treatment claim fails.

We need not consider Hardin's hostile work environment claim under § 1981. In a submission to the district court, the plaintiff did not raise this argument, and may have even expressly disavowed such a claim. Because of this, the claim is waived, and we need not address its merits.[2] *See Oates v. Discovery Zone,* 116 F.3d 1161, 1168 (7th Cir.1997) ("it is axiomatic that arguments not raised below are waived on appeal.").

## IV.

For the reasons we have discussed, Katie Hardin is unable to show that a genuine issue of material fact exists on either her Title VII or 42 U.S.C. § 1981 claim. Accordingly, the district court's entry of summary judgment in favor of the defendant, S.C. Johnson, is

AFFIRMED.

---

1. Hardin does not specifically point to this evidence in the § 1981 context; nevertheless we do not wish to let the allegation of such statements remain unaddressed.

2. Even if we examined the merits of the hostile environment claim, the plaintiff's argument would fail. In analyzing § 1981 claims, we apply the same standards as in Title VII cases. *Johnson v. City of Fort Wayne,* 91 F.3d 922, 940 (7th Cir.1996). As we found above, Ms. Hardin has no underlying claim that a hostile environment existed under Title VII based on the evidence presented. Thus, the company cannot be held liable § 1981.