**James COOK, Plaintiff,**

v.

**CUB FOODS, INC., Defendant.**

**No. 97 C 6776.**

United States District Court,
N.D. Illinois,
Eastern Division.

June 16, 2000.

Alan R. Press, Rick S. Hughes, Arlington Height, IL, for Plaintiff.

J. Kevin Hennessy, Michael Best and Friedrich, Daniel A. Kaufman, Sara Lynne Thomas, Adam Carl Smedstad, Michael Best & Friedrich, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

KENNELLY, District Judge.

Plaintiff James Cook was a maintenance manager at defendant Cub Foods' Arlington Heights store for approximately three years. In April of 1994, he left Cub and then filed an EEOC charge alleging that he had been subjected to a religiously hostile work environment and was retaliated against for opposing age-based discrimination. In September 1997, Cook filed this action against Cub alleging religious discrimination under Title VII of the Civil Rights Act of 1964 (Count 1); retaliation under the Age Discrimination in Employment Act ("ADEA") (Count 2); and disability discrimination under the Americans with Disabilities Act ("ADA") (Count 3). Cook later amended his complaint to include common law claims that Cub had negligently and recklessly retained, supervised and hired Cook's supervisor Donald Siwicki (Counts 4–9). Cub has moved for summary judgment on all of Cook's federal claims and has, more recently, separately moved for summary judgment on the state claims.

### Background

In October 1991, Cub hired Cook as an assistant maintenance manager at its Arlington Heights Store. In early 1992, Cook was promoted to maintenance manager by store manager Terry Prange. In January 1994, Donald Siwicki replaced Prange as store manager and as Cook's boss. Cook says that Siwicki called him names, threatened him, harassed him and subjected him to a religiously hostile work environment. Cub denies that Cook was subjected to a religiously hostile work environment or otherwise discriminated against based on a protected status. Instead, Cub says, Cook's problem was a personality conflict. Cook considered Siwicki his nemesis; he disliked both his personality and management style.

In February 1994, a month after Siwicki became Store Manager, Cook resigned as maintenance manager in a letter in which he stated that he resigning because of a "severe personality conflict" with Siwicki. On March 1, 1994, Madeline Onyszczak, Cub's human resource specialist, met with Cook to discuss his letter. Siwicki was also present. At this meeting Cook told Siwicki and Onyszczak that he was resigning from his position because of "personal issues" but would like to continue to work at the Arlington Heights store as a maintenance clerk.

After working for a short period of time as a maintenance clerk, Cook says that he requested a transfer, presumably because he had continued to clash with Siwicki. Cub denies that Cook requested a transfer but says that even if he had, there were no openings at the time for a full-time maintenance position at Cub's other suburban stores. Cook then interviewed for an opening in a different department at a different store. Cub says Cook did not get the position because he did not have any experience with dairy or frozen foods, and secondly, because the person who got the job had experience and was already employed at that store.

On April 18, 1994, Onyszczak again met with Cook. Siwicki was again present, but this time Cub says the purpose of the meeting was to find out why Cook had left early during his last shift without completing his work. Cub claims that at this meeting Cook quit his job. Cook denies this; he says he was fired.

### Legal Standard

In considering whether there are genuine issues of material fact for trial, we are required to consider all evidence and draw

all reasonable inferences in favor of Cook—the non-moving party. Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (where there is no genuine issue of material fact, summary judgment is appropriate). In employment discrimination cases like this one, we apply this standard with added rigor, as these cases often involve credibility disputes typically reserved for a jury. *See Robinson v. PPG Industries, Inc.,* 23 F.3d 1159, 1162 (7th Cir.1994).

## Title VII Claim

Cook claims that during the four months when Siwicki was his manager at the Arlington Heights store—January to April 1994—Siwicki maintained a religiously hostile work environment. Cook, who is Lutheran, says that Siwicki offended his religious beliefs. Cook claims that Siwicki twice played offensive "Satanic death metal" music over the loudspeakers, and from time to time in his office or around the store. Cook also claims that Siwicki posted memos with depictions of extreme and disturbing characters. Cub says that the characters on these memos were simply beasts from the "popular, widely circulated game, Dungeons & Dragons," and that Siwicki used these memos to motivate and congratulate employees. Cook acknowledges that some characters were from Dungeons & Dragons. He went to a specialty store where an employee identified one such character as "Lord Soth," a good knight until the cataclysm, but now a skeleton who has "risen from the dead, from hell ... to wreak havoc and death upon the whole world." Cook Dep. at 325–26. Cook said that this particular character—Lord Soth—had an "evil look in his eyes." *Id.* at 325. Siwicki apparently posted memos like these on the bulletin board next to Cook's desk.

■ Title VII extends to workplace harassment that is attributable to the plaintiff's sex, race, national origin—as well as to his religion. 42 U.S.C. § 2000e–2(a)(1); *Venters v. City of Delphi,* 123 F.3d

956, 974–75 (7th Cir.1997). Harassment includes conduct based on a plaintiff's protected status (*e.g.,* religion) that is sufficiently severe or pervasive so as to alter the conditions of employment, thereby creating a hostile or abusive work environment. *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *Venters,* 123 F.3d at 975. To make out such a claim, a plaintiff must show that his work environment was both objectively and subjectively hostile. *Id.* But before we address whether Siwicki's conduct was objectively or subjectively hostile, we must determine whether that conduct had a religious character or purpose. *Cf. Hardin v. S.C. Johnson & Son, Inc.,* 167 F.3d 340, 345 (7th Cir.) (claim of hostile work environment based on gender and race), *cert. denied,* —— U.S. ——, 120 S.Ct. 178, 145 L.Ed.2d 150 (1999). For the discrimination or harassment to be actionable under Title VII, it must have been "because of" Cook's religion. *Cf. Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (gender discrimination case; "[w]hatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive connotations, but actually constituted 'discrimina[tion] ... because of ... sex.'") (citing 42 U.S.C. § 2000e–2(a)(1)).

■ Siwicki's conduct was not directed at Cook because of his religion. While the characters on Siwicki's memos and his heavy metal music may have been offensive to Cook, perhaps subjectively creating a less then pleasant environment for him, there is no evidence that Siwicki was acting with an intent to harass Cook *because of his religion.* In other words, the memos and music were not inherently religious, nor is there evidence that they were directed at Cook because of his religious beliefs. *E.g., Venters,* 123 F.3d at 975; *cf. Hardin,* 167 F.3d at 346 (affirming dismissal of the plaintiff's sex and race based hostile work environment claims where su-

pervisor's conduct not directed at plaintiff because of her race or sex).

Indeed, nothing suggests that Siwicki's conduct was motivated by religious discrimination. Cook might have perceived that conduct as coming from a perspective different from, or contrary to, his own religious beliefs, but the evidence does not provided a basis to infer that that was what Siwicki intended. Siwicki's memos (posted on a community bulletin board that happened to be near Cook's desk) were for the entire Cub Foods Arlington Heights staff. For example, one such memo with the heavy metal band Manowar's seventh album cover "Triumph of Steel" in the foreground was about the store's productivity. It was addressed to "All" and read: "We've made a lot of progress in the last 8 weeks! It's tough, but we fought the fight and improved our productivity, sanitation, standards, merchandising, and sales. If the journey was 5 miles, I'd say we have 4 ½ miles down with ½ to go." Cook 12(N) Stmt. at Ex. 28.[1] The fact that Siwicki posted his memos on a community bulletin board and played his heavy metal music throughout the store belies Cook's claim that Siwicki targeted him based on his religion. And even if Siwicki's actions might somehow be thought to be religious in character (or, more specifically, anti-religious), Siwicki did not create an environment that could be considered *objectively* hostile to a Lutheran (or other Christian). *See Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (gender discrimination case; "merely offensive" behavior not sufficient; environment must be "sufficiently severe or pervasive to alter the conditions of the victim's employment.").

Cook attempts to rely on *Venters* to support his claim. Venters' supervisor constantly lectured her about her sins, her prospects for salvation, and her need to embrace "God's way" over "Satan's," and at one point he even suggested that committing suicide would be preferable to the sinful life she was living. *Venters,* 123 F.3d at 976–77. While Cook is correct that the plaintiff in *Venters* did not need to put a label on her own religious beliefs or demonstrate that she communicated her religious status to her employer, the harassment there was blatantly religious. *Id.* Not so here. This case is like *Hardin,* in which the court affirmed the dismissal of the plaintiff's hostile work environment claim because there was nothing inherently sexist or racist about her supervisor's conduct. The court explained that while it was unfortunate that the plaintiff had been subjected to course language and offensive conduct—*e.g.,* her supervisor startled her from behind, cut her off in the parking lot, and used persistent cursing and abusive language—she had no Title VII claim. *Hardin,* 167 F.3d at 345–46; *see also Johnson v. Hondo, Inc.,* 125 F.3d 408, 412 (7th Cir.1997) (abusive language found to be "simply expressions of animosity or juvenile provocation," rather than a hostile work environment based on sex).

Cook also relies on *Lambert v. Condor Manufacturing, Inc.,* 768 F.Supp. 600, 602 (E.D.Mich.1991). While the court did not determine whether the alleged offensive conduct was "because of" the plaintiff's religion (it was decided several years before *Venters* and *Hardin* ), the plaintiff in *Lambert* had repeatedly told his supervisors that the nude photos of women offended his religion. Not the case here. Cook never complained that Siwicki's conduct offended his Lutheran beliefs; Cub did not even know that he was Lutheran.

Cook complains about other conduct that likewise was not religious in character or purpose. For example, he says Siwicki constantly singled him out and physically threatened him. On one such occasion

---

1. Another handwritten note appears to be an "ode to Don" (Siwicki) and contains references to both death and blood. Though somewhat disturbing, we have no evidence that this poem (or perhaps revised heavy metal song lyrics) was directed at Cook because of his religion.

Cook says Siwicki told him he better get his work done "or his body will be floating in the river." Cook 12(N) Stmt., Ex. 25. But like Siwicki's memos and music, it would take a leap of faith to find any religious connotations to this threat.

Cook's workplace may have been unpleasant to him, but unpleasantness does not equate with discrimination. Cook cannot show that he was subjected to discrimination based on religion. He therefore has no Title VII claim. *See Vore v. Indiana Bell Telephone Co., Inc.*, 32 F.3d 1161, 1162 (7th Cir.1994) (workplace that is "unsavory for any reason other than hostility generated on the basis of race, gender, ethnicity, or religion" does not implicate Title VII).

In Count I of his complaint Cook also claims that Cub failed to accommodate his religious beliefs by failing to put a stop to Siwicki's conduct. But before we can address Cook's accommodation claim, he must first demonstrate a prima facie case of religious discrimination. *EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1575 (7th Cir.1997) (proceeding to accommodation claim once plaintiff makes out a prima facie case of religious discrimination). As explained above, Cook has not done this. He has not demonstrated that Siwicki's conduct was religious in nature, or that he told Cub that he found Siwicki's conduct *religiously* offensive. *Id.; cf. Lambert*, 768 F.Supp. at 603–04 (denying summary judgment on accommodation claim because plaintiff specifically objected to offensive pictures on religious grounds).

### Retaliation under the ADEA

In Count 2 of his complaint, Cook claims that Cub retaliated against him after he complained to Cub about age discrimination. Cook allegedly informed Siwicki that the former store manager, Terry Prange, had not required 60–year old employee Gerald Thompson to push carts in the parking lot. Cook says Siwicki told him to get the "old fart" out there, referring to Thompson. Second, Cook says he was retaliated against for making "informal" complaints to Madeline Onyszczak about older workers being forced to work in more arduous positions such as cashier. Finally, Cook says that shortly after he left Cub, he complained to John Hadfield, Cub's corporate human resource director, about age discrimination (among other things), and that he was blacklisted in the community as a result.

■ It is unlawful for an employer to retaliate because an employee engaged in protected activity under the ADEA. *See* 29 U.S.C. § 623(d). Like other disparate treatment employment discrimination cases, retaliation claims are analyzed under the familiar *McDonnell Douglas* framework. *See Vanasco v. National–Louis University*, 137 F.3d 962, 965 (7th Cir.1998). To establish a prima facie case of retaliation under the ADEA, Cook must show (1) he engaged in an activity protected by the ADEA; (2) his protected activity was known to Cub; (3) Cub subjected him to an adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse action. *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir.2000).

■ It is far from clear that Cook engaged in a protected activity. Though a formal complaint is not a prerequisite to a claim of retaliation, Cook did nothing more than offer vague opinions about the abilities of older workers, suggesting that they could not handle difficult, strenuous tasks. He was not complaining about age-based discrimination; rather he was advocating that Cub treat older employees differently by giving them easier tasks.

But even if we were able to find that Cook engaged in protected activity, he cannot demonstrate a "causal link" between that activity and an adverse employment action.[2] To demonstrate such a link,

---

2. At one point in his deposition Cook testified that had it not been for the alleged discrimi-nation, he would not have "quit" (Cook Dep. at 589), while earlier in the deposition he said

"circumstances must be present which reasonably suggest that the two events are somehow related to one another." *Sauzek,* 202 F.3d at 918.

Cook's complaint to Hadfield is not linked to his termination; he complained after he had already left Cub. Cook claims that Siwicki "blacklisted" him once he left. While Cook is correct that employees can sue former employers for allegedly retaliatory post-employment actions, *see Robinson v. Shell Oil Co.,* 519 U.S. 337, 345, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997), Cook has not connected this alleged retaliation to his complaint to Hadfield. There is no evidence that the complaint to Hadfield, who worked at Cub's corporate offices, ever made its way to Siwicki at the Arlington Heights store. And even if Siwicki did learn of this complaint, there is no evidence to suggest that he blacklisted Cook in retaliation for these complaints as opposed to acting out of pure spite.

The same can be said for Cook's termination. There is no evidence upon which a reasonable fact finder could draw an inference that Cub fired Cook because he was complaining about age-based discrimination. There was no suspicious timing; Cook was not terminated shortly after he supposedly complained to Siwicki and Onyszczak. *Cf. Bermudez v. TRC Holdings, Inc.,* 138 F.3d 1176, 1178 (7th Cir.1998) ("Timing may be an important clue to causation ... but does not eliminate the need to show causation") (internal citation omitted). All we have is speculation from Cook that his championing of the elderly caused Cub to fire him.[3] Because speculation cannot create a genuine issue for trial, Cub is entitled to summary judgment. *E.g., Sanchez v. Henderson,* 188 F.3d 740, 747 (7th Cir.1999) ("To conclude that retaliation was the real motive based on this evidence borders on pure speculation, and ... '[s]peculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.' ") (internal citation and quotation omitted), *cert. denied,* —— U.S. ——, 120 S.Ct. 1201, 145 L.Ed.2d 1104 (2000).

## ADA Claim

Cook says that Cub failed to accommodate his disability, namely his recurrent major depression. He says that Cub knew about his depression and failed to engage in an "interactive process" to help accommodate it. He volunteered himself for a demotion and asked for what he claims was a reasonable accommodation: to be transferred out from under Siwicki's supervision.

■ There is no genuine issue of material fact as to whether Cook was actually disabled within the meaning of the ADA. Under the ADA, the term "disability" includes persons who are actually disabled, those who are regarded as disabled, and those who have a record of being disabled. Cook relies on his diagnosis of major depression to support his claim that he was actually disabled. But that is not enough under the ADA; he must present evidence from which a reasonable fact finder could conclude that his depression substantially limited a major life activity—walking, seeing, hearing, speaking, breathing, learning or working. *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 119 S.Ct. 2139, 2149–50, 144 L.Ed.2d 450 (1999); *see also* 42 U.S.C. § 12102(2)(A), (B) & (C); 29 C.F.R.

---

he was fired and only told people he quit because he was ashamed he lost his job. *Id.* at 532. Even though it seems clear from Cook's own admissions that he quit, for purposes of this motion we will assume that his termination was an adverse employment action.

**3.** Cook offers what he believes is statistical evidence that Cub was engaged in age-based discrimination—*e.g.,* he says that one third of the April 1994 terminations or demotions involved employees over 40. Pltf. Resp. at 11. Even if true, however, this evidence does not further Cook's cause, as the issue is not whether this discrimination in fact existed at Cub, but whether Cub retaliated against Cook for complaining about it.

§ 1630.2(i). Thus, at the time of the alleged failure to accommodate, Cook's depression must have substantially limited one of these major life activities such that he was unable to perform "as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity." *Sutton,* 119 S.Ct. at 2145 (citing 29 C.F.R. § 1630.2(i)).

Cook claims that his depression substantially limited his ability to work. But this claim is contradicted by the evidence. Cook himself testified that he performed well at Cub. And despite his depression he was able to sustain a second part-time job as a pizza delivery person. Cook further concedes that his treating physician thought he "function[ed] fine at work." Pltf. Resp. at 13. Cook instead argues that Siwicki's treatment of him aggravated his depression and affected his ability to work. But as Cub has points out, "a personality conflict with a supervisor or co-worker does not establish a disability within the meaning of [the ADA] ... even if it produces anxiety and depression ...." *Palmer v. Circuit Court of Cook County,* 117 F.3d 351, 352 (7th Cir.1997) (internal citation omitted), *cert. denied,* 522 U.S. 1096, 118 S.Ct. 893, 139 L.Ed.2d 879 (1998). While it is certainly possible for a conflict with a supervisor or co-worker to trigger a psychological disturbance sufficiently debilitating to constitute a disability within the meaning of the ADA, *see Martyne v. Parkside Medical Services,* No. 97 C 8295, 2000 WL 748096, at *2 (N.D.Ill. June 8, 2000), Cook offers no evidence suggesting that that was the case here. Rather, the evidence established only that Cook could not work with Siwicki. *Weiler v. Household Finance Corp.,* 101 F.3d 519, 524 (7th Cir.1996)

(plaintiff's claim amounts to nothing more than being unable to work with her boss, which is not recognized as a disability under the ADA.). Cook concedes that he could and did work elsewhere. The inability to work at one particular place of employment does not qualify Cook as being substantially limited in his ability to work.[4] *Sutton,* 119 S.Ct. at 2152.

 Cook argues in the alternative that Cub regarded him as having a disability. Under the ADA, an employee is "regarded as disabled" if his impairment does not substantially limit a major life activity, but the employer treats the employee as if he had such a disability. *See* 29 C.F.R. § 1630.2(g)(3); *Sutton,* 119 S.Ct. at 2149–50. The only evidence Cook offers to support this claim, however, is that Siwicki once called him a "retard." This random comment does not even come close to creating a triable issue as to whether Cub regarded Cook as being disabled. It only shows that Siwicki was cruel and insensitive to Cook, not that Cub treated him in such a way as to indicate that it perceived him to be substantially limited in a major life activity. *E.g., Banks v. Hit or Miss, Inc.,* 996 F.Supp. 802, 808 (N.D.Ill.1998) (while inappropriate, the defendant's random comments did not indicate that defendant perceived the plaintiff as being substantially impaired in a major life activity).

In sum, there is no genuine issue of material fact on Cook's claim that he has a disability within the meaning of the ADA. Therefore, Cook's disability discrimination and accommodation claims must fail. *E.g., Bultemeyer v. Fort Wayne Community Schools,* 100 F.3d 1281, 1284 (7th Cir.1996) (plaintiff must show that he was or is disabled to support an ADA accommodation claim). Cook is therefore entitled to summary judgment on Cook's ADA claim.

4. Cook also claims that his condition impaired his ability to socialize, function sexually, concentrate and sleep. Pltf. Resp. at 12. But even if these can be considered "major life activities" within the meaning of the ADA, there is no evidence that Cook was *substantially* limited in any these activities. Indeed, despite these alleged conditions he was able to work, and at one point even held down two jobs. His doctor testified that he was "competent and functioning," "able to cope with stress," and he was only limited "to some degree" in his ability to interact with others. Dr. Caliendo Dep. at 40.

**Conclusion**

Cub's motion for summary judgment as to Counts 1, 2, and 3 is granted [57–1]. Cub's motion for reconsideration [87–1] is denied as moot.