Connie **LOMBARDO**, and Steven R. **Myron**, M.D., Plaintiffs,

v.

John **LOMBARDO**, John Doe, and Jane Doe Defendants.

No. 1:99–CV–95.

United States District Court, N.D. Indiana, Fort Wayne Division.

March 21, 2002.

See also 2002 WL 448484.

David A Gunter, Dean Mead, Viera, FL, for Connie Lombardo, Steven R Myron, MD, plaintiffs.

Robert G Forbes, Forcum and Forbes, Hartford City, for John F Lombardo, John Doe, Jane Doe, defendants.

## MEMORANDUM OF DECISION AND ORDER

WILLIAM C. LEE, Chief Judge.

On March 11, 1999, Plaintiffs Connie Lombardo nee Ragle[1] (hereinafter "Ragle") and Steven Myron (hereinafter "Myron") filed the present action against the defendants, John Lombardo (hereinafter "Lombardo"), John Doe, and Jane Doe,[2] alleging violations of Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (hereinafter "Title III") and its Indiana equivalent, Ind.Code § 35–33.5–5–4. Ragle and Stevens allege that Lombardo illegally intercepted, disclosed, and used Plaintiffs' wire, oral, or electronic communications.

Presently before the Court is Plaintiffs' Motion for Summary Judgment filed on December 15, 1999. On January 7, 2000, Lombardo filed a Response and Statement

---

1. Since this action was filed, Connie Lombardo has assumed the name of Connie Ragle, presumably her maiden name. Consequently, this Order refers to Plaintiff Ragle as "Ragle." Moreover, Plaintiff Ragle is now married to Plaintiff Myron.

2. Defendants John Doe and Jane Doe were alleged to have "aided and abetted or otherwise assisted Lombardo" in tape-recording certain of Ragle and Steven's telephone conversations.

of Genuine Issues of Material Fact, to which Plaintiffs replied on October 1, 2001.[3] Defendants filed an additional reply brief on October 25, 2001.

At a hearing on the motion held on November 14, 2001, the Court granted the parties sixty days to perform additional discovery. On February 12, 2002, Plaintiffs filed a "Supplemental Brief in Support of Pending Motions for Summary Judgment" together with a motion to consolidate this case with a companion case, *Lombardo, et al. v. Forbes, et al.*, No. 1:00–CV–14 ( N.D. Ind. filed Jan. 7, 2000), now pending in this Court and arising from the same incidents. For the following reasons, Plaintiffs' Motion for Summary Judgment with respect to the federal claims will be GRANTED in part, and DENIED in part. Plaintiffs' state claims will be BIFURCATED and STAYED pending the outcome of the proceedings on the federal claims.

Plaintiffs' motion to consolidate the two cases will be taken under advisement.

## FACTUAL BACKGROUND

During the relevant time period in 1996 and 1997, Plaintiff Ragle was married to Defendant Lombardo. (Ragle Aff. ¶ 2 [4]). In October 1996, Lombardo moved out of their marital home. (*Id.*). In approximately December 1996, unbeknownst to Ragle, Lombardo installed a tape-recording device in their marital home and recorded telephone calls between his wife and others, including Plaintiff Myron. (*Id.* at ¶ 6; Myron Aff. ¶ 4). The recorded telephone conversations revealed that Ragle and Myron were having an affair. (Trans. p. 223–24 [5]).

On March 14, 1997, Lombardo personally served divorce papers on his wife at her place of employment. (Ragle Aff. at ¶ 3). The next day, Lombardo moved back into

---

**3.** Plaintiffs' Reply was considerably delayed because the Court had stayed this suit pending the outcome of criminal proceedings against Lombardo. *See Lombardo, et al. v. Lombardo, et al.*, No. 1:99–CV–95 (N.D.Ind. Aug.16, 2000) (order closing case for statistical purposes).

**4.** In this Order, the Court refers to the affidavits of Connie Ragle and Steven Myron as "Ragle Aff." and "Myron Aff.," respectively. The deposition testimony of John Lombardo is referred to as "Lombardo Dep."

**5.** In this Order, "Trans." refers to the trial transcript of the divorce proceedings between Ragle and Lombardo. Although no copies of the divorce proceeding transcript were presented in this case, an excerpt from this transcript has been presented in the companion case to this case, *Lombardo, et al. v. Forbes, et al.*, No. 1:00–CV–14 (N.D. Ind. filed Jan. 7, 2000). It is appropriate for a court to take judicial notice of its own records and rely on those records in deciding a motion for summary judgment. *See St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1171–72 (10th Cir.1979) (stating district court may take judicial notice of its own records of prior litigation in deciding motion for summary

judgment); *Federal Election Comm'n v. Hall–Tyner Election Campaign Comm.*, 524 F.Supp. 955, 959 n. 7 (S.D.N.Y.1981) ("any facts subject to judicial notice may be properly considered in a motion for summary judgment"), *aff'd*, 678 F.2d 416 (2d Cir.1982), *cert. denied*, 459 U.S. 1145, 103 S.Ct. 785, 74 L.Ed.2d 992 (1983). Accordingly, this Court takes judicial notice of the transcript excerpt submitted in *Forbes*.

Moreover, the Court is aware that Lombardo objects to the introduction of Julie Myron's testimony on hearsay grounds. Lombardo, however, quotes from Julie Myron's testimony and other portions of the divorce proceeding transcript in his own Statement of Genuine Issues. *See* Defendant, John F. Lombardo, Statement of Genuine Issues p. 2–4. Accordingly, Lombardo has waived any objection he may have to the introduction of the trial transcript. *See Wilson v. Williams*, 161 F.3d 1078, 1087–88 (7th Cir.1998); *Gill v. Thomas*, 83 F.3d 537, 541 (1st Cir.1996) ("[H]aving offered the [disputed evidence] himself and having received the strategic benefit therefrom, [the offering party] cannot now be heard to complain that his own offer of such evidence was reversible error.")

the marital home without Ragle's consent. At that time, Lombardo indicated that he knew Ragle's attorney's name, though she had never disclosed this information to him. Lombardo also indicated that he had evidence that he would use against Ragle in their divorce proceedings. (*Id.* at ¶ 4).

On March 16, 1997, while Lombardo was away from the house, Ragle discovered a cassette tape recorder in her basement. The recorder was connected to a phone jack. (*Id.* at ¶ 5). Shortly thereafter, Lombardo confronted Ragle because he discovered the tape recorder missing. During this confrontation, Lombardo asked for the recorder back and quoted conversations Ragle had had with others on the telephone. He told Ragle he had been taping her conversations for months and that he had several copies of the tapes. (*Id.* at ¶ 6). He also indicated that he intended to send copies of the tape recordings to Ragle's business associates, customers, and family members if Ragle did not accede to all of his demands in connection with the divorce. (*Id.* at ¶ 7). In response to Lombardo's threats, Ragle obtained an order from the Jay Circuit Court on March 20, 1997, enjoining Lombardo from disseminating or disclosing the contents of "any unlawfully recorded telephone conversations." (*Id.* at ¶ 8).

Lombardo did, in fact, disclose the contents of the tapes to Julie Myron, wife of Plaintiff Steven Myron. (*Id.* at ¶ 9; Myron Aff. ¶¶ 2, 4; Lombardo Dep. p. 18). Julie Myron testified that Lombardo had disclosed the contents of the tapes to her and testified as to the contents of the tapes during the Lombardo–Ragle divorce proceedings. (Ragle Aff. at ¶ 9; Trans. p. 221, ln. 2–4). Lombardo and Ragle were divorced in January 1998. Thereafter, Ragle and Myron brought this suit.

## DISCUSSION

### I. Standard of Review

"Summary judgment is proper only if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Gonzalez v. Ingersoll Milling Machine Co.,* 133 F.3d 1025, 1031 (7th Cir.1998) (quoting Fed.R.Civ.P. 56(c)). While the moving party "always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record, if any, which it believes demonstrate the absence of a [genuine issue of] material fact, there is nothing in Rule 56 that requires a moving party to negate an essential element of an opponent's claim for which the opponent will bear the ultimate burden at trial." *Bank of Illinois v. Allied Signal Safety Restraint Sys.,* 75 F.3d 1162, 1168 (7th Cir.1996) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Rather, the standard for granting summary judgment requires the district court to grant summary judgment if the record before us "could not lead a rational trier of fact to find for the non-moving party." *McClendon v. Indiana Sugars, Inc.,* 108 F.3d 789, 796 (7th Cir. 1997) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

The burden is therefore on the non-movant to set forth "specific facts showing that there is a genuine issue for trial." *Eiland v. Trinity Hosp.,* 150 F.3d 747, 750 (7th Cir.1998) (quoting Fed.R.Civ.P. 56(e)). "In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor

of that party." *Debs v. Northeastern Illinois Univ.*, 153 F.3d 390, 394 (7th Cir. 1998). Substantive law determines which facts are "material"; that is, those facts which might affect the outcome of the suit under the governing law. *See McGinn v. Burlington Northern R.R. Co.*, 102 F.3d 295, 299 (7th Cir.1996). Consequently, a dispute over irrelevant or unnecessary facts does not preclude summary judgment. *See Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir.1999).

The non-moving party may not rest on the pleadings in opposing a motion for summary judgment. *See Crim v. Bd. of Educ. of Cairo Sch. Dist. No. 1*, 147 F.3d 535, 540 (7th Cir.1998). Rather, the non-moving party must produce some evidence sufficient to show that a genuine issue of material fact exists. "Futhermore, a 'party needs more than a scintilla of evidence ... to defeat summary judgment.'" *Adusumilli v. City of Chicago*, 164 F.3d 353, 361 (7th Cir.1998) (quoting *Senner v. Northcentral Technical College*, 113 F.3d 750, 757 (7th Cir.1997)). Thus, a summary judgment determination is essentially an inquiry as to whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

## II. Federal Claims

### A. Title III Background

Section 2511 of Title III states in relevant part:

(1) Except as otherwise specifically provided in this chapter any person who -

  (a) intentionally intercepts, endeavors to intercept or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;

  ...

  (c) intentionally discloses or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing for having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;

  (d) intentionally uses or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;

... shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

18 U.S.C. § 2511(1)(a),(c),(d).

Title III also includes an explicit private right of action:

Except as provided in Section 2511(2)(a)(ii), any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity which engaged in that violation such relief as may be appropriate.

18 U.S.C. § 2520(a).

In this case, Plaintiffs allege that Lombardo committed three separate violations of Title III. First, Plaintiffs claim Lombardo intercepted the telephone communications in violation of 18 U.S.C. § 2511(1)(a). Second, Plaintiffs claim Lombardo intentionally disclosed the contents of the illegally intercepted communications in violation of 18 U.S.C. § 2511(1)(c). Finally, Plaintiffs contend Lombardo intentionally used the contents of the illegally intercepted communications in violation of 18 U.S.C. § 2511(1)(d).

## B. Interspousal Immunity

Defendant argues that Title III does not apply to his actions because he taped the conversations of his wife in their marital home. Specifically, Defendant argues an interspousal immunity exception to Title III exists. Several courts have been called upon to consider the question of whether one spouse can be held liable for recording the conversations of the other spouse under Title III. The first case to consider the question of interspousal immunity to Title III was *Simpson v. Simpson*, 490 F.2d 803 (5th Cir.1974). In that case, a husband had intercepted the telephone conversations of his wife using electronic equipment in the marital home. The Court noted that "the naked language of Title III, by virtue of its inclusiveness, reaches [cases involving interspousal interceptions]. However, we are of the opinion that Congress did not intend such a result." *Id.* at 805. Thus, the Court decided that Title III does not apply to interspousal wiretapping, a decision the Court recognized was at odds with the plain language of the statute. Since the *Simpson* decision, four other circuits have reviewed the question whether an interspousal exception exists to liability under Title III. These circuits—the Fourth, Sixth, Eighth, and Tenth Circuits—all rejected the reasoning of *Simpson* and found no exception for interspousal interceptions of communications. *See Heggy v. Heggy*, 944 F.2d 1537 (10th Cir.1991), *cert. denied* 503 U.S. 951, 112 S.Ct. 1514, 117 L.Ed.2d 651 (1992); *Kempf v. Kempf*, 868 F.2d 970 (8th Cir.1989); *Pritchard v. Pritchard*, 732 F.2d 372 (4th Cir.1984); *United States v. Jones*, 542 F.2d 661 (6th Cir.1976). Thus, the majority of circuit courts to consider this issue have found no interspousal exception to liability.

The Court of Appeals for the Second Circuit considered a similar question in *Anonymous v. Anonymous*, 558 F.2d 677 (2d Cir.1977). In that case, the Court affirmed the district court's dismissal of a complaint brought under 18 U.S.C. § 2511(1) and § 2520 by a wife whose telephone conversations with her children had been allegedly intercepted and recorded by her estranged husband. Although the Court found that an exception to Title III existed in that case, it also stated that Congress did not intend to blanketly except all interspousal wiretapping from coverage by the statute. *See id.* at 677. Moreover, *Anonymous* can be distinguished from the facts in this case because it did not involve the wiretapping of one spouse by another spouse. Rather, the ex-husband was eavesdropping on and recording the telephone conversations between his child and his ex-wife. The extension phone exemption under Title III (exempting individuals who listen in on a phone conversation via a second "extension" phone connected on the same phone line from liability) as well as cases citing the rights of parents to monitor their children's telephone calls, *see, e.g., Scheib v. Grant*, 22 F.3d 149 (7th Cir.1994), distinguish and explain the ruling in *Anonymous*. As a result, *Anonymous* is inapplicable to this case.

The Court of Appeals for the Seventh Circuit has not directly considered the issue of interspousal immunity under Title III. Defendant correctly points out that in *United States v. Rizzo*, 583 F.2d 907 (7th Cir.1978), the Court "assumed" the *Simpson* court correctly decided the issue. *See id.* at 909. The Court, however, limited its endorsement of *Simpson*: "We assume, *without deciding*, that *Simpson* was correctly decided ..." *Id.* (emphasis added). Thus, the Court made clear that it was not ruling on the question of whether spouses are immune from liability under Title III. Moreover, the *Rizzo* case was decided before a majority of the other circuits had raised serious questions about the validity of *Simpson*.

■ In addition, district courts in the Seventh Circuit have expressly declined to follow the holding in *Simpson*. In *Heyman v. Heyman*, 548 F.Supp. 1041 (N.D.Ill.1982), the Court stated that *Simpson* was either wrongly decided or distinguishable from the facts in *Heyman*. The Court went on to find that Title III prohibits interspousal wiretapping in domestic conflicts. The Court pointed out that the statute only regulates electronic eavesdropping and does not consider the merits of domestic relations cases, and thus does not intrude on a matter ordinarily left to the states. Likewise, in *Walker v. Carter*, 820 F.Supp. 1095 (C.D.Ill.1993), the Court stated that Title III prohibits all unauthorized interspousal wiretapping committed within the marital home. Based on the foregoing precedents, this Court finds that no exception to Title III liability exists where one spouse intercepts, discloses, or uses the telephone conversations of another spouse. Accordingly, the Court will now apply Title III to the claims in this case.

## C. Liability

At the outset, the Court notes that section 2511 of Title III includes a different mental state requirement for disclosure and use violations, *see* 18 U.S.C. §§ 2511(1)(c) and (d), than for interception violations, *see* 18 U.S.C. § 2511(1)(a). To prove that a defendant has disclosed or used unlawfully recorded communications in violation of Title III, a plaintiff must show that the defendant did so "knowing or having reason to know that the information was obtained through [unlawful] interception of a wire, oral, or electronic communication ...." *See* 18 U.S.C. §§ 2511(1)(c) and (d); *see also Thompson v. Dulaney*, 970 F.2d 744 (10th Cir.1992).[6]

6. Plaintiffs have argued that the state of mind for a person who is directly involved with the interception is irrelevant to that party's liability for subsequent disclosure and use. Thus, plaintiffs argue, they do not need to show that Lombardo knew the tapes had been recorded unlawfully. This is simply not correct. In *Thompson v. Dulaney*, 970 F.2d 744 (10th Cir.1992), a husband sued his ex-wife for intercepting, disclosing, and using his telephone conversations. After finding that the defendant must have acted intentionally with respect to the interception claim, the Tenth Circuit stated as follows:

The use or disclosure must still be intentional, but in addition, a plaintiff must show that a defendant "know[s] or ha[s] reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection." This language, found in each of subsections (c) and (d), compels the conclusion that, to establish liability under one of those sections, a plaintiff must demonstrate a greater degree of knowledge on the part of a defendant. The defendant must know 1) the information used or disclosed came from an intercepted communication, and 2) sufficient facts concerning

the circumstances of the interception such that the defendant could, with presumed knowledge of the law, determine that the interception was prohibited in light of Title III.

*Id.* at 749. On remand, the District Court granted summary judgment against the wife on the interception claim, but denied summary judgment on the disclosure and use claims. The court found a fact issue as to whether the wife knew the interception had been illegal. *See Thompson v. Dulaney*, 838 F.Supp. 1535, 1546 (D.Utah 1993). Specifically, the District Court stated, "in order to set forth a *prima facie* claim for use and disclosure liability under Title III, a defendant must know that the information used or disclosed was the result of an illegal wiretap. Proof of knowledge that the information came from a wiretap is, without more, insufficient to make out a *prima facie* case." *Id.* at 1546; *see also Kratz v. Kratz*, 477 F.Supp. 463 (E.D.Pa.1979) (denying ex-wife's motion for summary judgment where there was a fact issue as to whether ex-husband had known or had reason to know that his interceptions of her telephone conversations had been illegal, as required for disclosure and use liability). As a result, in this case, Plaintiffs must show that Lombardo knew the wiretap was illegal

In contrast, a plaintiff need only show that the defendant did, in fact, intentionally (rather than inadvertently) intercept electronic communications to prove an interception violation of Title III. *See* 18 U.S.C. § 2511(1)(a); *see also Fultz v. Gilliam*, 942 F.2d 396 (6th Cir.1991); *Campiti v. Walonis*, 611 F.2d 387 (1st Cir.1979).

In this case, Lombardo does not deny that he intentionally intercepted Ragle's and Myron's telephone conversations without their consent. (Lombardo Dep. p. 5). Accordingly, Lombardo must be held liable for an interception violation of Title III and summary judgment for the plaintiffs will be granted on that claim.

■ Similarly, Lombardo does not deny that he used and disclosed the contents of the illegally recorded tapes. (Lombardo Dep. p. 18). He does, however, contend that he did not have the requisite mental state for disclosure and use violations of Title III. (Lombardo Dep. 5–14, 16–19, 23, 31–32, 38). That is, Lombardo claims he did not know that recording the telephone conversations was unlawful because he believed his actions were protected by an interspousal immunity exception. Therefore, he did not disclose or use the recordings "knowing or having reason to know that the information was obtained through [unlawful] interception." Indeed, as discussed above, in the Seventh Circuit, the law has been unclear as to whether an interspousal immunity exception to Title III exists. It is plausible, then, that with no formal legal training, Lombardo could not know that no interspousal immunity exception to Title III existed.

Plaintiffs, for their part, have submitted a copy of the Protective Order entered by the Jay Circuit Court on March 20, 1997 enjoining Lombardo from disclosing the contents of the recordings. Presumably, this order could have put Lombardo on notice that the tapes may have been unlawfully recorded.[7] Accordingly, a genuine issue of material fact exists as to whether Lombardo knew or should have known the tapes he recorded were unlawfully intercepted. Plaintiffs' summary judgment motion on the disclosure and use claims will be denied.

**D. Damages**

■ Lombardo lists several genuine issues of material fact which preclude summary judgment on the issue of damages. Accordingly, the Court will not determine damages on the federal claims at this time. First, Lombardo claims that he did not disclose the tapes to anyone other than Julie Myron. (Lombardo Dep. p. 17). Plaintiff Myron, however, asserts that "information concerning those telephone calls was also circulated to my parents and possibly to others." (Myron Aff. ¶ 3). Accordingly, a genuine issue exists as to the number, if any, of disclosure violations Lombardo committed.

■ In addition, an issue exists as to whether Lombardo acted with malice and intent to injure as relevant to the question of punitive damages. *See Jacobson v. Rose*, 592 F.2d 515, 520 (9th Cir.1978) ("In order to receive punitive damages under § 2520, appellants must show that defendants acted wantonly, recklessly, or maliciously"). Finally, there exists a genuine issue as to the number of days of wiretapping. This information is necessary to determine the extent of Lombardo's violation and the amount of damages due the

---

in order to prevail on the disclosure and use claims.

7. The Court notes that the Jay Circuit Court order only enjoins Lombardo from disclosing

"any unlawfully recorded tapes." It does not, however, expressly state that the tapes Lombardo made were unlawfully recorded.

Plaintiffs. Accordingly, summary judgment on the issue of damages will be denied.[8]

## III. State Claims

Because the state claims present novel questions of state law, they will be bifurcated from the federal claims in this case and stayed pending the outcome of any proceedings on the federal claims.

## IV. Motion to Consolidate

Plaintiffs have also moved to consolidate this case with its companion case, *Lombardo, et al. v. Forbes, et al.,* No. 1:00-CV-14 ( N.D. Ind. filed Jan. 7, 2000). Defendants have argued that the two cases should remain separate because they pose different legal issues. As a result, the motion to consolidate the cases will be taken under advisement at this time.

## CONCLUSION

Based on the foregoing, Plaintiffs' Motion for Summary Judgment with respect to the federal claims is hereby GRANTED in part, and DENIED in part. Plaintiffs' state claims are BIFRUCATED and STAYED pending this Courts decision on the federal claims. Plaintiffs' motion to consolidate this case with *Lombardo, et al. v. Forbes, et al.,* No. 1:00–CV–14 ( N.D. Ind. filed Jan. 7, 2000) is taken under advisement.

---

8. The remaining genuine issues of fact Defendant asserts are either irrelevant or not genuine issues. As noted above, a dispute over irrelevant or unnecessary facts does not preclude summary judgment. *See Hardin v. S.C. Johnson & Son, Inc.,* 167 F.3d 340, 344 (7th Cir.1999). First, Lombardo argues that there is a genuine issue as to whether the Jay Circuit Court ever issued any order enjoining Lombardo from disclosing the contents of the tapes. Plaintiffs have produced this order and submitted it to this Court. Accordingly, there is no genuine issue as to its existence. Lombardo further claims that there is no proof that the Jay Circuit Court order was ever served on him. Lombardo is free to argue that point to the jury when arguing that he did not know the tapes were illegal.

Lombardo also contends that there is a genuine issue as to whether he disclosed the contents of the tapes. Lombardo admitted as much in his deposition. (Lombardo Dep. p. 18). As a result, no genuine issue exists.

Lombardo further argues that an issue exists as to what the recordings contained. However, after the divorce trial and extensive proceedings in this case, it is clear that the recordings indicated that Ragle and Myron were having an affair. Accordingly, no genuine issue as to the contents of the tapes exists.

Finally, Lombardo argues that a genuine issue exists as to what constitutes the "marital home" for purposes of any interspousal immunity exception. As discussed above, however, this Court does not find any exception for interspousal wiretapping. Therefore, whether the tape-recording occurred in the marital home or what constitutes the marital home is not relevant to determining Lombardo's liability.