Maryann DOMMER, Margaret McCarthy, Brenda K. Dommer, Michelle L. Swallow and Laura A. Guffey, Appellants–Plaintiffs,

v.

Steven W. DOMMER, Appellee–Defendant.

No. 64A03–0409–CV–410.

Court of Appeals of Indiana.

June 10, 2005.

Richard Cagen, Valparaiso, for Appellants.

George R. Livarchik, Chesterton, for Appellee.

## OPINION

MAY, Judge.

Maryann Dommer ("Wife"), Margaret McCarthy, Brenda K. Dommer, Michelle L. Swallow, and Laura A. Guffey[1] appeal the trial court's grant of summary judgment to Steven W. Dommer ("Husband").[2] Wife and Friends raise the following consolidated and restated issues:

1. Whether the trial court erred when it held Husband could not be liable under 18 U.S.C. § 2520 ("the federal statute")[3] for taping Wife's telephone conversations with Friends; and

2. Whether the trial court erred when it held Husband could not be liable under Ind.Code § 35–33.5–5–4 ("the state statute")[4] for taping Wife's telephone conversations with Friends.

We reverse and remand.

### FACTS AND PROCEDURAL HISTORY [5]

The parties agree to the following facts. Husband and Wife lived together in the home they jointly owned. After Husband's son came to live with them, Husband and Wife became concerned son was using illegal drugs. Husband and Wife decided to record son's telephone conversations to determine whether he was using drugs. On March 15, 2001, Husband and Wife obtained and installed equipment that would permit them to record telephone calls to and from their house without either of the parties to the conversation knowing the recording was happening. Husband then used that or similar equipment to record telephone conversations between Wife and Friends. Wife filed a petition for dissolution of marriage in September of 2003.

On January 23, 2004, Wife filed a complaint in which she alleged Husband recorded her conversations on a substantially continual basis from March 15, 2001 to July 1, 2003. She claimed Husband "used or attempted to use the information gathered from the wrongful recordings in the later filed action for dissolution" and he used the information gathered in the recordings "to alienate [Wife] from members of [Husband]'s family." (Appellee's App.

---

1. McCarthy, Brenda Dommer, Swallow, and Guffey are family and friends of Wife. Hereinafter, we will refer to those family and friends collectively as "Friends."

2. Wife originally filed an appendix that, among other inadequacies, was neither bound on the left nor consecutively paginated. On February 25, 2005, we ordered Wife to provide us with an appendix that complied with the Appellate Rules, either by correcting the original appendix or by filing a new appendix. Wife filed a replacement appendix on March 9, 2005.

3. The federal statute provides "any person whose wire, oral, or electronic communica-

tion is intercepted, disclosed, or intentionally used in violation of this chapter" may recover civil damages.

4. The state statute imposes civil liability for intercepting, disclosing, or using communications of another person in violation of Ind. Code Art. 35–33.5.

5. We held oral argument on April 19, 2005, at Decatur Central High School. We commend counsel on their presentations, and we thank the students and faculty at the high school for their warm reception.

at 13.) [6] Wife asserted Husband's act subjected him, under both the federal and state statutes, to liability including liquidated damages, punitive damages, court costs, and reasonable attorney fees.

On May 21, 2004, Wife moved for summary judgment on her federal claim, alleging she was entitled to recovery under the federal statute based on the facts admitted by Husband. Husband responded to her motion on July 26, 2004.

On June 7, 2004, between the filing of Wife's summary judgment motion and Husband's response, Friends filed a civil complaint alleging substantially the same facts along with the fact that Husband had recorded their phone calls with Wife without their knowledge or permission. Friends asserted Husband is liable to them under the same statutes Wife cited. Husband moved to have Friends' cause consolidated with Wife's cause pursuant to Trial Rule 42, and the trial court granted that motion.

The trial court held a hearing on Wife's motion for summary judgment, and then granted summary judgment to Husband on both counts of Wife's complaint and both counts of Friends' complaint. The trial court explained its decision as follows:

## I. Alleged Violation of I.C. 35–33.5–5–4

Plaintiffs allege in Count I of the complaint that [Husband] was in violation of I.C. 35–33.5–5–4 when he tape recorded phone conversations of [Wife] that took place in their joint residence. Plaintiff's Complaint, p. 2. Because of this violation, [Wife] requests damages to be collected pursuant to the statute. *Id.* While it is undisputed that [Husband] did in fact record the phone calls of his wife, he was not in violation of I.C. 35–33.5–5–4.

Indiana case law is unclear in defining what constitutes a violation of the Indiana State Wiretapping Act. The Wiretapping Act (I.C.35–33.5–5–4) has never been applied to prohibit wiretapping in the marital home. *State v. Lombarde* [sic], 738 N.E.2d 653, 660 (Ind. 2000). *In Re: Marriage of Lopp* merely discusses the admissibility of recorded phone conversations in proceedings to dissolve a marriage. 268 Ind. 690, 378 N.E.2d 414 (1978). The case at bar was instituted as a separate action and the admissibility of the tapes in the proceedings has never been at issue. *Apter v. Ross* involved a father who was tape recording phone conversations between his son and his estranged wife. 781 N.E.2d 744 (Ind.Ct.App.2003). All of these cases involve other legal actions. The case at bar is different in that it is merely a case involving the wiretapping as an independent cause of action.

When used in a case involving a tort or a crime it appears the Indiana Wiretapping Statute allows, *inter alia,* for the recovery of damages. Had this case revolved around another issue, such as an alleged slander committed by [Husband], the tapes then would have been a necessary element of [Husband's] case. [Wife] could have then filed a valid claim under the Indiana Wiretapping Statute. However, just because a person is tape recorded does not automatically entitle that person to damages. The use of the tapes dictates what legal remedies are available to those who have been recorded.

---

6. The Table of Contents in the corrected appendix filed by Wife pursuant to our February 25, 2005 order indicates Wife's complaint is on pages 12–14 of her appendix. However, those pages are missing from the appendix Wife submitted. Instead, the appendix skips from page 11 to page 15. Accordingly, we cite the copy provided by Husband in his appendix.

## II. Alleged violation of [18] U.S.C. 2520

[Wife and Friends] allege that [Husband] was in violation of the [sic] 18 U.S.C[.] 2520 when he recorded phone conversations from a hidden location in his house. Plaintiff's Complaint p. 1. The facts are undisputed that [Husband] had installed a hidden tape recorded [sic] behind a water heater in his home to tape record his wife. Deposition of [Husband], p. 23–28. [Wife], [sic] alleges that this is a violation of 18 U.S.C[.] 2520, the federal wiretapping statute. Plaintiff's Complaint p. 3. [Husband] maintains that his actions were covered under an in home exception that allows a home owner to tape conversations in one's own home. Plaintiff's Memorandum of Law, p. 5.

The federal statute allows recovery for damages arising from wrongful phone recording. 18 U.S.C. 2520. However, an in-home exception making it legal for a home owner to record phone calls in the home has been carved out by case law. *Scheib v. Grant*, 22 F.3d, [sic] 149, 154–155 (7th Cir.1994). As the 7th Circuit has explained, the Federal Wiretap Act does not apply to tape recording calls within one's own home. *Scheib v. Grant*, 22 F.3d 149, 154–155 (7th Cir.1994). In *Scheib*, the 7th Circuit examined the legislative intent of the Federal Wiretap Act and determined that Congress did not intend the act to prohibit one from intercepting a family member's telephone conversation by a recording device in one's own marital home.

The federal wiretap act contains an exception making it legal for a business to record phone conversations. The Court in *Scheib* extended the business exception to the home as well. As the court explained:

Reading this extension phone exemption as a whole, then, it is no logical stretch to read this language as applying to a "subscriber's" conduct—or "business"—in raising his or her children. Congress might have spelled out in more precise detail the contours of the extension phone exemption; but its failure to do so does not relieve us of the obligation to give the statute a reading consistent with the probable intent of the legislature. *Scheib* at 154.

This in home exemption extends to the case at bar. Because [Husband] was engaged in protecting the welfare of his children, he was within the confines of the law when he recorded the phone conversations of his wife.

[Husband] was protected by the in home exception set forth by the *Scheib* court when he tape recorded conversations in his home. Clearly, the exception that the 7th Circuit found extends to this case. [Husband] was within his rights as a joint home owner with his wife to record conversations in the home. As joint owners, both were entitled under 18 U.S.C[.] 2520 to record conversations that took place in their house.

(Appellants' App. at 8–11) (emphasis in original).

## DISCUSSION AND DECISION

Appellants' issues relate to the propriety of the trial court's grant of summary judgment to Husband. Therefore, we begin with the standard of review for summary judgment motions, both in the trial court and on appeal.

"The purpose of summary judgment is to terminate litigation about which there can be no material factual dispute and which can be resolved as a matter of law." *Branham v. Celadon Trucking*

*Serv., Inc.,* 744 N.E.2d 514, 521 (Ind.Ct. App.2001), *trans. denied* 753 N.E.2d 16 (Ind.2001). A trial court should grant summary judgment if the pleadings and designated evidence demonstrate "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). Any doubts about the existence of material issues of fact must be resolved in favor of the non-moving party. *SLR Plumbing & Sewer, Inc. v. Turk,* 757 N.E.2d 193, 198 (Ind.Ct.App.2001).

▮ The party moving for summary judgment has the initial burden to set forth evidence demonstrating no factual issues exist. *Branham,* 744 N.E.2d at 521. Then, the burden shifts to the nonmoving party to produce evidence demonstrating an issue of fact exists. *Id.* The nonmoving party may not simply rest on the pleadings; rather, he or she must designate evidence to the trial court. *Id.*

▮ We review the trial court's decision applying the same standard applied by the trial court. *SLR Plumbing,* 757 N.E.2d at 198. In addition, our review is limited to the evidence designated to the trial court. *Id.* We may affirm on any theory supported by that evidence. *Branham,* 744 N.E.2d at 521.

## 1. Federal Statute [7]

▮ In response to two United States Supreme Court decisions in the late 1960's, Congress began drafting comprehensive legislation regarding the use of evidence obtained via electronic surveillance. *Henson v. State,* 790 N.E.2d 524, 529 (Ind.Ct.

7. While we address the parties' arguments herein on the merits, we also note the trial court erred on purely procedural grounds when it granted summary judgment to Husband on Wife's state law claim and to Husband on Friends' federal and state claims.

"[N]o provisions in the Trial Rules authorize the entry of summary judgment *sua sponte,* and the practice should be used only rarely and with caution." *Jones v. Berlove,* 490 N.E.2d 393, 395 (Ind.Ct.App.1986). A court should not enter summary judgment on an issue not raised by the parties because "the non-movant must be afforded an opportunity to meet the proposition that there was no genuine issue of material fact." *Parrish v. Toth,* 559 N.E.2d 369, 371 (Ind.Ct.App.1990). Therefore, "[t]he paramount consideration is whether the party against whom summary judgment has been entered had notice and adequate opportunity to prepare and present materials in opposition." *Jones,* 490 N.E.2d at 395.

Contrary to Husband's allegations in his brief, Wife did not have notice that her state law claim was in jeopardy. Husband began his argument at the summary judgment hearing by stating they were before the court to discuss the Federal Wiretap Act (Tr. at 18), and ended his argument by stating the court should deny Wife's motion for summary judgment under the federal statute. (Tr. at 35.) While Husband did cite an Indiana Court of Appeals decision in his brief in opposition to summary judgment, he cited the case for its holding under the federal statute. Wife was not given an opportunity to present materials in opposition to summary judgment on her state claim.

Friends were not a party to Wife's motion for summary judgment, and neither Husband nor Friends filed a motion for summary judgment. Accordingly, Friends had no notice their claims were in jeopardy. Husband asserts the trial court did not err because Friends' claims failed as a matter of law when Wife's claims failed. *See Lizza v. Lizza,* 631 F.Supp. 529, 533–34 (E.D.N.Y.1986) ("it would be anomalous to conclude that although 18 U.S.C. § 2520 confers no cause of action in favor of the family member, it does confer a claim on the other party to the call"). However, at least one other court has not been persuaded by such an argument. *Kirkland v. Franco,* 92 F.Supp.2d 578, 580 (E.D.La.2000) ("While *Simpson [ v. Simpson,* 490 F.2d 803 (5th Cir.1974) ], supports [husband] in his arguments against [wife], the decision does not apply to [the other party] because she was never his spouse."). We need not decide whether to follow *Lizza* or *Kirkland,* because we hold herein that a wife can assert a claim against her husband under the federal and state wiretap acts.

App.2003) (citing *Berger v. New York,* 388 U.S. 41, 50–51, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967) (Fourth Amendment is not violated when authorities record defendant's telephone calls without entering his residence); and *Katz v. United States,* 389 U.S. 347, 359, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (authorities' attachment of a recording device to the outside of a telephone booth constituted a "search" for purposes of the Fourth Amendment)), *trans. denied* 804 N.E.2d 750 (Ind.2003). Ultimately, Congress enacted Title III of the Omnibus Crime Control and Safe Streets Act of 1968. *Id.* The purposes of that Act are "to protect the privacy of wire and oral communications and to delineate 'on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized." ' *Id.* (quoting *Gelbard v. United States,* 408 U.S. 41, 48, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972)).

The relevant portions of the federal act provide:

(1) Except as otherwise specifically provided in this chapter any person who—

(a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral or electronic communication;

(b) intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when—

(i) such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communication . . .

(c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;

(d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; . . .

shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

18 U.S.C. § 2511(1).

Another section of the Act permits a person whose communications have been intercepted to recover in a civil action:

(a) In general.—Except as provided in section 2511(2)(a)(ii), any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.

(b) Relief.—In an action under this section, appropriate relief includes—

(1) such preliminary and other equitable or declaratory relief as may be appropriate;

(2) damages under subsection (c) and punitive damages in appropriate cases; and

(3) a reasonable attorney's fee and other litigation costs reasonably incurred.

(c) Computation of damages.—

\* \* \* \* \* \*

(2) In any other action under this section, the court may assess as damages whichever is the greater of—

(A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or

(B) statutory damages of whichever is the greater of $100 a day for each violation or $10,000.

(d) Defense.—A good faith reliance on—

(1) a court warrant or order, a grand jury subpoena, a legislative authorization, or a statutory authorization;

(2) a request of an investigative or law enforcement officer under section 2518(7) of this title; or

(3) a good faith determination that section 2511(3) or 2511(2)(i) of this title permitted the conduct complained of;

is a complete defense against any civil or criminal action brought under this chapter or any other law.

18 U.S.C. § 2520.[8]

■ In short, "unauthorized interceptions and the disclosure or use of the information obtained are crimes, and the victim of such interception and/or disclosure is entitled to recover civil damages." *Henson,* 790 N.E.2d at 529.

However, the federal act contains a number of exceptions, including one that has been dubbed the "extension phone exemption":

(5) "electronic, mechanical, or other device" means any device or apparatus which can be used to intercept a wire, oral, or electronic communication other than—

(a) any telephone or telephone instrument, equipment or facility, or any component thereof, (i) furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business or furnished by such subscriber or user for connection to the facilities of such service and used in the ordinary course of the business.

18 U.S.C. § 2510(5)(a)(i).

The Seventh Circuit held the extension phone exemption permits parents to record the conversations of their children:

The language of § 2510(5)(a)(i) juxtaposes the terms "subscriber" and "user" with the phrase "in the ordinary course of its business." Although the latter phrase might be used to distinguish commercial life from personal life, in the context presented here, it must be read in conjunction with the terms "subscriber" and "user." These terms certainly do not have exclusively market-oriented connotations. Reading this extension phone exemption as a whole, then, it is no lexical stretch to read this language as applying to a "subscriber's" conduct—or "business"—in raising his or her children. Congress might have spelled out in more precise detail the contours of the extension phone exemption; but its failure to do so does not relieve us of the obligation to give the statute a reading consistent with the probable intent of the legislature. We cannot attribute to Congress the intent to subject parents to criminal and civil penalties for recording their minor child's phone conversations out of con-

---

**8.** Subsection (e) institutes a two-year statute of limitations on civil actions. Subsection (f) requires the government agencies and departments to investigate possible violations of the Wiretapping Act and to determine whether disciplinary action is warranted for any employee who violates the Act. Subsection (g) makes improper disclosure of information by government employees in excess of the parameters provided by the statute. As none of those subsections is relevant to this appeal, we do not set them out in their entirety.

cern for the child's well-being. As Judge Anderson stated in *Newcomb* [ *v. Ingle,* 944 F.2d 1534 (10th Cir.1991) (affirming grant of summary judgment to custodial mother who recorded phone conversations of her minor son) ], there is simply no reason why Congress would grant such an exemption to commercial but not domestic subscribers.

*Scheib v. Grant,* 22 F.3d 149, 154 (7th Cir.1994), *reh'g denied* (7th Cir.1994), *cert. denied* 513 U.S. 929, 115 S.Ct. 320, 130 L.Ed.2d 280 (1994).

Husband claims we should expand *Scheib* and hold a marital exception exists in the federal act because "the undisputed evidence shows [Husband]'s tape recording of [Wife]'s phone conversation was motivated out of concern for the welfare of his children." (Br. of Appellee–Defendant at 30.) He claims Wife was harassing his ex-wife and his children who lived with his ex-wife. The expansion of *Scheib* Husband requests is not supported by *Scheib,* nor does it seem prudent in light of other available precedent.

In *Scheib,* the parties conceded "the statute does not contain any sort of 'interspousal immunity.'" 22 F.3d at 153. Therefore, the Seventh Circuit was explicit that "the question of any kind of 'interspousal' exemption is *not* at issue." *Id.* (emphasis added). In no case since *Scheib* has the Seventh Circuit decided whether the federal act contains an exception for interspousal immunity.

One federal circuit court has found a marital exception in the act based on the extension phone exemption. *Simpson v. Simpson,* 490 F.2d 803 (5th Cir.1974), *reh'g denied, cert. denied* 419 U.S. 897, 95 S.Ct. 176, 42 L.Ed.2d 141 (1974). Because Husband urges us to follow the logic of *Simpson,* we set out its reasoning:

The naked language of Title III, by virtue of its inclusiveness, reaches this case. However, we are of the opinion that Congress did not intend such a farreaching result, one extending into areas normally left to states, those of the marital home and domestic conflicts. We reach this decision because Congress has not, in the statute, committee reports, legislative hearings, or reported debates indicated either its positive intent to reach so far or an awareness that it might be doing so. Given the novelty of a federal remedy for persons aggrieved by the personal acts of their spouses within the marital home, and given the severity of the remedy seemingly provided by Title III, we seek such indications of congressional intent and awareness before extending Title III to this case.

Our independent search of legislative materials has been long, exhaustive, and inconclusive. To summarize the results, we have found no direct indications that Congress intended so much, and only several scattered suggestions that it was aware that the statute's inclusive language might reach this case....

\* \* \* \* \* \*

Not only does the report, like the act, focus on crime control, but it also contains no clear indication that Congress intended to intrude into the marital relation within the marital home. We thus have considered it necessary to consult the extensive legislative hearings on the subject, the better to gauge Congress's intent and awareness.

The impression left by these hearings is similar to that produced by the report—the focus was official use of surveillance devices, with little explication of how far the private prohibition should extend....

Of what testimony there was about private surveillance, only a minor por-

tion was with reference to the marital setting. The only relevant passages which we have found, in hearings stretching over five years, are set forth in the margin. It should be noted that the concerns and information in these passages are primarily directed towards the involvement of private investigators in marital conflicts. Indeed, were appellant seeking to recover from a third party, we could not, on the basis of this legislative history, accept the defense that the interceptions were authorized by the husband. However, to our minds a third-party intrusion into the marital home, even if instigated by one spouse, is an offense against a spouse's privacy of a much greater magnitude than is personal surveillance by the other spouse. The latter, it seems to us, is consistent with whatever expectations of privacy spouses might have vis-à-vis each other within the marital home.

\* \* \* \* \* \*

Given this inconclusive legislative history, we think two other factors are important. First, it is clear that Congress did not intend to prohibit a person from intercepting a family member's telephone conversations by use of an extension phone in the family home—subsection (5)(a)(i) of section 2510 directly covers this point. If there is a convincing distinction between this clearly acceptable overhear and the overhear accomplished by appellee, we fail to see it. In fact, we think the (5)(a)(i) exemption is indicative of Congress's intention to abjure from deciding a very intimate question of familial relations, that of the extent of privacy family members may expect within the home vis-à-vis each other.

Second, we note that not only does Title III have the primary goal of controlling crime, but that it also prescribes criminal sanctions for its violators. That is, if appellant prevails here then appellee is subject to severe criminal penalties, assuming of course that the prosecution could meet the higher standards of proof required for criminal convictions. We thus are bound by the principle that criminal statutes must be strictly construed, to avoid ensnaring behavior that is not clearly proscribed. We consider this basic due process principle to be of considerable importance in this case, in light of our own inability to determine from the statute and its legislative history whether one is prohibited from taping one's spouse's conversations within one's own home.

\* \* \* \* \* \*

As should be obvious from the foregoing, we are not without doubts about our decision. However, we have concluded that the statute is not sufficiently definite and specific to create a federal cause of action for the redress of appellant's grievances against her former husband. Our decision is, of course, limited to the specific facts of this case. No public official is involved, nor is any private person other than appellee, and the locus in quo does not extend beyond the marital home of the parties.

*Simpson,* 490 F.2d at 805–10 (footnotes and internal citations omitted).

On October 1, 1981, the Fifth Circuit was divided to create two circuits. Federal courts in Alabama, Florida, and Georgia became the Eleventh Circuit, while the federal courts in Texas, Louisiana, and Mississippi remained the Fifth Circuit. The two new circuits have dealt with *Simpson* differently. The new Fifth Circuit Court has not published a decision

reaffirming or overruling *Simpson*.[9] However, the Eleventh Circuit has explicitly overruled *Simpson* in its jurisdiction. *Glazner v. Glazner*, 347 F.3d 1212 (11th Cir.2003).

In *Glazner*, during divorce proceedings, husband placed a recording device on the telephone in the marital home and recorded wife's conversations. The trial court granted summary judgment to husband on wife's federal claim because of *Simpson*, and a panel of the Eleventh Circuit affirmed because only the Eleventh Circuit sitting en banc or the Supreme Court could overrule *Simpson*. *Id.* at 1214. Hearing the case en banc, the Eleventh Circuit held:

> The language of Title III is clear and unambiguous. It makes no distinction between married and unmarried persons or between spouses and strangers. It plainly applies to "any person" on both sides of the violation (save only the inapplicable exceptions).
>
> The one circumstance in which a court may properly look beyond the plain language of a statute is where giving effect to the language used by Congress would lead to a truly absurd result. Neither the court in *Simpson* nor any of the parties in this case suggest that the absurdity exception applies to prevent Title III's provisions from governing interspousal behavior. The language of Title III demonstrates that Congress decided that one spouse should not be permitted to record, without consent, electronically transmitted conversations between the other spouse and third parties. This prohibition is not truly absurd.

Equally compelling is the fact that, since the Fifth Circuit decided *Simpson* nearly three decades ago, an overwhelming majority of the federal circuit and district courts, as well as state courts, addressing the issue have refused to imply an exception to Title III liability for interspousal wiretapping. [Citations to cases from 10th Cir., 8th Cir., 4th Cir., 6th Cir., W.D.N.Y., E.D. Pa., Ala., Cal., N.C., R.I., and W.Va.].

> We are persuaded by the reasoning of all the courts which have refused to find an exception for interspousal wiretapping either explicitly in the text of Title III or implicitly in the legislative history. While we agree with the dissenters that the concept of the rule of law underlying our Constitution requires a substantial measure of continuity, certainty, and respect for precedent, we must follow the Supreme Court's instruction that *stare decisis* should be abandoned where, as here, "a prior judicial ruling should come to be seen so clearly as error that its enforcement was for that very reason doomed." Therefore, we hold that no exception for interspousal wiretapping exists in Title III. Accordingly, we overrule *Simpson*.

*Id.* at 1215–16.

One of the "overwhelming majority of circuits" to which the *Glazner* court was referring was the Sixth Circuit, which rejected the reasoning of *Simpson* in *United States v. Jones*, 542 F.2d 661 (6th Cir. 1976). Prior to holding its case was factually distinguishable from *Simpson* because Jones recorded the phone calls of his es-

---

**9.** In an *unpublished* decision affirming a grant of summary judgment to a wife who was sued by her husband under the federal act, the court noted husband "has not shown how *Simpson* …, upon which the district court relied in dismissing his suit, is distinguishable from his case or explained why it

should not control." *Craft v. Hicks*, 273 F.3d 1099 (5th Cir.2001). In addition, a district court in Louisiana held, based on *Simpson*, a wife did not have an action against her husband for recording her telephone calls. *Kirkland*, 92 F.Supp.2d at 580.

tranged wife *after* he had moved out of the marital home, the court rejected the *Simpson* analysis of the legislative history underlying Title III.

As the Supreme Court stated in *United States v. Giordano*, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 ... (1974), "the purpose of the legislation ... was effectively to prohibit ... all interceptions of oral and wire communications, except those specifically provided for in the Act ...."

\* \* \* \* \* \*

Although the *Simpson* Court admitted that the "naked language" of Title III was all-inclusive, they [sic] concluded that Congress did not intend to intrude into domestic conflicts normally left to state law. The *Simpson* Court reviewed the Act's legislative history and based their [sic] conclusion on the lack of a positive expression of Congressional intent to include purely interspousal wiretaps within the Act's prohibitions....

Ordinarily a court will not refer to legislative history in construing a statute which is clear on its face. The language of s 2511(1)(a) quite clearly expresses a blanket prohibition on all electronic surveillance except under circumstances specifically enumerated in the statute. The natural presumption when construing a statute is that Congress meant what it said. However, the *Simpson* Court concluded that, despite the literal language of the section, the absence of positive proof of congressional intent to include interspousal wiretaps in the Act's prohibitions indicated that Congress did not intend to reach that activity.... This conclusion is untenable because it contradicts both the explicit language of the statute and the clear intent of Congress expressed in the Act's legislative history.

\* \* \* \* \* \*

Our review of the legislative history of this section, testimony at congressional hearings, and debates on the floor of Congress, inescapably lead to the conclusion that 18 U.S.C. s 2511(1)(a) establishes a broad prohibition on all private electronic surveillance and that a principal [sic] area of congressional concern was electronic surveillance for the purposes of marital litigation.

The *Simpson* Court was privy to many of the same materials which were reviewed by this Court. However in *Simpson* their importance was discounted because the Court distinguished between unaided surveillance by a spouse and surveillance involving a third-party, even if instigated by the spouse. This distinction has been seized upon in a subsequent case. In our view, it is a classic "distinction without a difference." For purposes of federal wiretap law, it makes no difference whether a wiretap is placed on a telephone by a spouse or by a private detective in the spouse's employ. The end result is the same[:] the privacy of the unconsenting parties to the intercepted conversation has been invaded. It is important to recognize that it is not just the privacy of the targeted spouse which is being violated, but that of the other party to the conversation as well....

\* \* \* \* \* \*

The implication is clear then that the Congress enacted Title III to protect the privacy of all persons conversing over the telephone and that their privacy is shielded from invasion by third parties and spouses alike.

As a matter of statutory construction, the conclusion reached in *Simpson* is also questionable. The explicit language of 18 U.S.C. s 2511(1)(a) is that "any person" who violates the section is liable

to punishment "except as otherwise specifically provided." If Congress had intended to create another exception to Title III's blanket prohibition of unauthorized wiretaps they [sic] would have included a specific exception for interspousal wiretaps in the statute. As noted previously, Congress was well aware that wiretaps were frequently used to investigate domestic relations cases. We also dispute the implication in *Simpson* that the limited attention given to private electronic surveillance in the legislative history, relative to that afforded surveillance by law enforcement personnel, reflects Congress' equivocation on the scope of Title III in the private sector. The more plausible explanation is that it was the consensus of Congress that there is "no justification" for private electronic surveillance so that debate centered on the more volatile issue of law enforcement surveillance.

This interpretation is consistent with the pervasive theme of Title III that electronic surveillance should be sharply curtailed and in no instance be undertaken without strict judicial authorization and supervision.

*Id.* at 666–71.

Because neither the United States Supreme Court, the Seventh Circuit Court of Appeals, the Indiana Supreme Court[10] nor this court has ruled on this issue, it is one of first impression in our jurisdiction. However, we do have the assistance of a well-reasoned opinion from the Federal

District Court for the Northern District of Indiana, which held the federal act does not contain an interspousal immunity exception. *Lombardo v. Lombardo,* 192 F.Supp.2d 885 (N.D.Ind.2002).

One month after a husband moved out of the marital residence because the parties separated, the husband began taping his wife's telephone calls. *Id.* at 887. Through the recordings he was able to confirm the wife was having an affair, and he filed for divorce. *Id.* Wife discovered the tape recorder connected to the phone line in the basement of the home, and husband admitted possessing tapes of her telephone calls and threatened to expose the tapes to others if she did not accede to his demands in the divorce action. *Id.* at 888. Wife brought a civil action under the federal act alleging, among other things, husband intercepted her calls in violation of 18 U.S.C. § 2511(1)(a).

The district court noted:

[Husband] argues that Title III does not apply to his actions because he taped the conversations of his wife in their marital home. Specifically, [husband] argues an interspousal immunity exception to Title III exists. Several courts have been called upon to consider the question of whether one spouse can be held liable for recording the conversations of the other spouse under Title III. The first case to consider the question of interspousal immunity to Title III was *Simpson v. Simpson,* 490 F.2d 803 (5th Cir.1974). In that case, a husband had

---

10. Our supreme court has noted the split of authority on the question. *In re Marriage of Lopp,* 268 Ind. 690, 378 N.E.2d 414, 420 (1978). However, the *Lopp* court decided the issue before it without explicitly deciding whether the federal act contained an interspousal exception. In essence, the *Lopp* court "presumed without deciding" that a husband's recording of a wife's phone calls was illegal under the federal act; thus the court

implicitly declined to read a marital exception into the federal act. However, as *Lopp* could be easily resolved on other grounds, it was unnecessary for the court to delve into the existence of a marital exception in the federal act. For that reason, we do not read *Lopp* as an indication of the Indiana Supreme Court's opinion regarding the existence of a marital exception in the federal act.

intercepted the telephone conversations of his wife using electronic equipment in the marital home. The Court noted that "the naked language of Title III, by virtue of its inclusiveness, reaches [cases involving interspousal interceptions]. However, we are of the opinion that Congress did not intend such a result." *Id.* at 805. Thus, the Court decided that Title III does not apply to interspousal wiretapping, a decision the Court recognized was at odds with the plain language of the statute. Since the *Simpson* decision, four other circuits have reviewed the question whether an interspousal exception exists to liability under Title III. These circuits—the Fourth, Sixth, Eighth, and Tenth Circuits—all rejected the reasoning of *Simpson* and found no exception for interspousal interceptions of communications. *See Heggy v. Heggy,* 944 F.2d 1537 (10th Cir.1991), *cert. denied* 503 U.S. 951, 112 S.Ct. 1514, 117 L.Ed.2d 651 ... (1992); *Kempf v. Kempf,* 868 F.2d 970 (8th Cir.1989); *Pritchard v. Pritchard,* 732 F.2d 372 (4th Cir.1984); *United States v. Jones,* 542 F.2d 661 (6th Cir.1976). Thus, the majority of circuit courts to consider this issue have found no interspousal exception to liability.

*Id.* at 890. After noting other district courts in the Seventh Circuit had declined to read a marital exception into the federal wiretap act, the *Lombardo* court held "no exception to Title III liability exists where one spouse intercepts, discloses, or uses the telephone conversations of another spouse." *Id.* at 891.

Based on the analyses of the legislative history of Title III provided in *Glazner, Jones,* and *Lombardo,* we decline to follow *Simpson.* The plain language of the federal act makes it applicable to spouses. *See* 18 U.S.C. § 2511(1) ("any person who ... intentionally intercepts"); 18 U.S.C. § 2520(a) ("any person whose wire, oral, or electronic communication is intercepted"). If Congress had wanted to exclude spouses from liability under the federal act, it presumably would have included a "spousal exception" with the numerous other exceptions in the act. We will not carve such an exception into the act when it appears Congress did not want one.

The *Lombardo* court also discussed the different *mens rea* requirements for liability under different sections of Title III. *Lombardo,* 192 F.Supp.2d at 891. The court noted "a plaintiff need only show that the defendant did, in fact, intentionally (rather than inadvertently) intercept electronic communications to prove an interception in violation of Title III." *Id.* at 892. Because the husband admitted he intentionally taped his wife's phone calls, the court held he "must be held liable for an interception violation of Title III and summary judgment for the plaintiffs will be granted on that claim." *Id.*

■ Similarly, Husband admits he intercepted Wife's telephone conversations with Friends. Accordingly, Wife and Friends are entitled to summary judgment under the federal act. We reverse the trial court's grant of summary judgment to Husband on Wife's and Friends' claims, and we remand for further proceedings consistent with this opinion.

### 3. State Statute

■ Indiana's statute creating civil liability for the interception of communications provides:

A person whose communications are intercepted, disclosed, or used in violation of this article:

(1) has a civil cause of action against a person who intercepts, discloses, uses, or procures another person to inter-

cept, disclose, or use a communication in violation of this article; and

(2) is entitled to recover from that person the following:

(A) The greater of:

(i) actual damages;

(ii) liquidated damages computed at a rate of one hundred dollars ($100) each day for each day of violation; or

(iii) one thousand dollars ($1,000).

(B) Court costs.

(C) Punitive damages, when determined to be appropriate by the court.

(D) Reasonable attorney's fees.

Ind.Code § 35–33.5–5–4(a).[11]

"Interception" is defined as:

the intentional: (1) recording of; or (2) acquisition of the contents of; a telephonic or telegraphic communication by a person other than a sender or receiver of that communication, without the consent of the sender or receiver, by means of any instrument, device, or equipment under this article. This term includes the intentional recording of communication through the use of a computer or a FAX (facsimile transmission) machine.

Ind.Code § 35–33.5–1–5.[12]

The parties' arguments focus on whether the Indiana Act contains a marital home exemption, and below we will discuss the Indiana case law regarding that issue. However, we first address the ground on which the trial court appears to have granted summary judgment. The court's order provided:

When used in a case involving a tort or a crime it appears the Indiana Wiretapping Statute allows, *inter alia*, for the recovery of damages. Had this case revolved around another issue, such as an alleged slander committed by [Husband], the tapes then would have been a necessary element of [Husband's] case. [Wife] could have then filed a valid claim under the Indiana Wiretapping Statute. However, just because a person is tape recorded does not automatically entitle that person to damages. The use of the tapes dictates what legal remedies are available to those who have been recorded.

(Appellants' App. at 9.)

 The court provided no authority to support its holding. The parties have provided no discussion of, nor argument for or against, the court's conclusion, nor have we found any relevant language in the statute or case law. The statute provides a civil cause of action to a person whose communications are "intercepted,

---

**11.** Subsection (b) provides immunity to persons relying in good faith on a warrant or extension of a warrant. Subsection (c) provides an affirmative defense for journalists and persons affiliated with news services, radio stations, and television stations, if additional requirements are met. As Husband's acts did not occur in any of those contexts, we do not set out those exceptions in full. Subsection (d) sets the statute of limitations for bringing an action at two years.

**12.** Because "interception" occurs only "without the consent of the sender or receiver," Ind.Code § 35–33.5–1–5, Indiana's Act contains a consent exception. *See Packer v. State,* 800 N.E.2d 574, 582 (Ind.Ct.App.2003) (recordings of telephone conversations an inmate made from jail were not "interceptions" of communications under the Indiana Act where the inmate consented to the recordings), *trans. denied* 812 N.E.2d 795 (Ind. 2004); *Apter v. Ross,* 781 N.E.2d 744 (Ind.Ct. App.2003) (father with joint legal custody had right to consent to the tape recording of minor daughter's phone conversations unless court had curtailed such right), *trans. denied sub nom Apter v. Apter* 792 N.E.2d 46 (Ind. 2003). However, no one alleges Wife or Friends consented to Husband recording their phone conversations.

disclosed, or used." Ind.Code § 35–33.5–5–4(a). Because that phrase is written in the disjunctive, a plaintiff need prove only one of those three violations occurred. *See, e.g., In re Adoption of J.P.,* 713 N.E.2d 873, 875 (Ind.Ct.App.1999) (when statute written in disjunctive, party needs prove only one factor to meet the statutory requirement). Wife alleged her communications were improperly intercepted, and that is sufficient to provide her a cause of action. Accordingly, the trial court erroneously concluded that "just because a person is tape recorded does not automatically entitle that person to damages." (Appellants' App. at 9.)

Prior to that conclusion, the trial court concluded if Husband had used the tapes in a court action, "[Wife] could have then filed a valid claim under the Indiana Wiretapping Statute." (*Id.*) That language suggests the court did not find a marital exception in the Indiana Act. Nevertheless, as the parties dispute the existence of a marital exception under the Indiana Act, and as the trial court would need to address the issue on remand, we set out the relevant law.

Our supreme court has addressed the Indiana Wiretap Act on only one occasion. *See State v. Lombardo,* 738 N.E.2d 653 (Ind.2000). The State charged Lombardo[13] with Class C felony interception of telephone conversations for allegedly hiding a recording device at the home of his estranged wife to record her telephone conversations. Lombardo moved to dismiss the charges against him because the statute was unconstitutionally vague. The trial court granted his motion. Our supreme court concluded the statute was not void for vagueness:

(1) the Indiana Wiretap Act is sufficiently clear and definite to warn a person of ordinary intelligence that the act of intentionally wiring a hidden tape recorder to document the private telephone conversations between a spouse and third parties, without their knowledge or permission, is prohibited under the Act; (2) the State will henceforth be required to prove intentional conduct in charging and prosecuting individuals under Indiana Code § 35–33.5–5–5(b); (3) an interception under the Act can be accomplished "by means of *any* instrument, device, or equipment"; [and] (4) our legislature did not intend to directly incorporate the Federal Wiretap Act statutory or case law into Indiana's Act but instead meant to exempt from its provisions federal law enforcement surveillance activities within Indiana's borders.

*Id.* at 660.

The court's fourth conclusion, regarding the relevance of case law under the Federal Wiretap Act, is pertinent to the case before us. Ind.Code § 35–33.5–5–5(a) provides: "This section does not apply to a person who makes an interception authorized by federal law." Lombardo argued that language in the Indiana Wiretap Act incorporated the Federal Wiretap Act and any case law construing the federal act, such that the split between federal circuits regarding the scope of the marital exception rendered Indiana's Act unconstitutionally vague because he did not know whether he was permitted to record his wife's conversations. *Lombardo,* 738 N.E.2d at 657–58. Our supreme court rejected that assertion, finding instead that section simply provides "the exemption required by the Supremacy Clause for any wiretapping conducted by law enforcement under the federal act that would be prohibited under

---

**13.** Lombardo is the same husband who was sued by his wife in federal court. *See supra* Issue 1 (discussing *Lombardo v. Lombardo,* 192 F.Supp.2d 885 (N.D.Ind.2002)).

the Indiana Act." *Id.* at 658. Our supreme court held that, while "there are important similarities between Indiana's Wiretap Act and the Federal Wiretap Act," *id.* at 659, "Indiana's statutory scheme largely stands on its own." *Id.*

The court then went on to say:

In holding that the Indiana Wiretap Act does not incorporate by reference federal case law on intercepting the telephone communications of one's spouse within the marital home, we note that we have not been asked to express any opinion, and we do not, as to whether the wiretapping at issue in this case occurred in the marital home or as to whether there is a marital home exception implicit in the Indiana Wiretap Act.

*Id.* at 659–60. Accordingly, our supreme court explicitly declined to address the question placed before us today.

In the civil version of the *Lombardo* dispute, which was brought in federal court, the wife alleged the husband's recording of her telephone calls violated the Indiana Act. However, the district court explicitly declined to address wife's state law claim. Instead it held: "Because the state claims present novel questions of state law, they will be bifurcated from the federal claims in this case and stayed pending the outcome of any proceedings on the federal claims." *Lombardo*, 192 F.Supp.2d at 893.

We have addressed whether the Indiana Wiretap Act contains an "extension phone exemption" as courts have found in the Federal Act. *Apter v. Ross*, 781 N.E.2d 744 (Ind.Ct.App.2003), *trans. denied* 792 N.E.2d 46 (Ind.2003). In *Apter*, a father argued he had a right to record his daughter's conversations because the Indiana Act "incorporates the extension telephone exemption of the Federal Wiretap Act."

*Apter*, 781 N.E.2d at 756. The father cited Ind.Code § 35–33.5–5–5(a), which provides: "This section does not apply to a person who makes an interception authorized under federal law." We held:

[O]ur Indiana Supreme Court already rejected this argument in *State v. Lombardo*. 738 N.E.2d at 658. In *Lombardo*, our supreme court ruled that through this language "our legislature did not intend to directly incorporate the Federal Wiretap Act statutory or case law into Indiana's Act but instead meant to exempt from its provisions federal law enforcement surveillance activities within Indiana's borders." *Id.* at 660. Therefore, we find that the Federal Wiretap Act's extension telephone exemption is not incorporated into the Indiana Wiretap Act.

*Apter*, 781 N.E.2d at 756. We concluded by saying: "In addition, the Indiana Wiretap Act on its own does not contain language that could be construed as an extension telephone exemption." *Id.*

Husband claims we should hold a marital residence exception exists in Indiana. However, he has not cited a section, clause, or phrase from the Indiana Act that would support the creation of such an exception. He simply claims: "The same undisputed designated facts support application of the marital home exception under the Indiana Wiretap Act." (Appellee's Br. at 15.) Even if we had found a marital exception under the federal statute, we could not extend that exception to Indiana's Act because: (1) the federal exception for recording in the marital home has been inferred from the existence in the federal act of the extension phone exemption; and (2) the Indiana Act does not contain an extension phone exemption.[14]

14. As a final attempt to support an exception, Husband cites state law regarding rights of a

We decline to read a marital exception into Indiana's Wiretap Act when the language of the statute does not suggest the legislature intended such an exception. If our legislature wants a marital exception to exist, we leave it to the legislature to create. Therefore, we reverse the trial court's grant of summary judgment to Husband on Wife's and Friends' state claims, and we remand for further proceedings consistent with this opinion.

Reversed and remanded.

DARDEN, J., and BARNES, J., concur.

landowner. He notes Indiana law gives the rights of possession, use and enjoyment, and disposition to property owners, (Appellee's Br. at 31) (citing *Rhoades v. State*, 224 Ind. 569, 70 N.E.2d 27, 29 (1946)), and alleges he should be "equally entitled to the use, benefit, possession and enjoyment of the entire property." (*Id.*) However, Husband has not explained why his use and enjoyment of his home requires that he record Wife's phone calls, or why his desire to record should outweigh the expectation Wife presumably had that her "use and enjoyment" of her home would include the right to make private calls.

Husband also notes he has a duty to protect social guests from unreasonable risks or dangers found on his property, but again he fails to explain why he needed to record Wife's phone calls to protect his social guests. Perhaps he is trying to tie this issue into Wife's alleged harassment of Husband's children and ex-wife, on the theory that his children are "social guests" when they visit. Because he has not provided a cogent argument, it is waived.